ADAMS, Appellant,

v.

CHAMBERS, f.k.a. Adams, Appellee.

[Cite as *Adams v. Chambers* (1992), 82 Ohio App.3d 462.]

Court of Appeals of Ohio,
Butler County.

No. CA92–01–002.

Decided Sept. 14, 1992.

*R. Michael McEvilley,* for appellant.

*Bressler, Shanks & Gedling Co., L.P.A.,* and *H.J. Bressler,* for appellee.

WALSH, Judge.

Plaintiff-appellant, Everett Adams, and defendant-appellee, Clarice J. Chambers,[1] were married on October 15, 1988. Because the parties had substantial assets before the marriage, they executed an antenuptial agreement on September 25, 1988.

Appellant filed for divorce less than three years later, on January 25, 1991. The Butler County Court of Common Pleas, Domestic Relations Division, granted the divorce on December 9, 1991. The trial court, in its judgment entry and decree of divorce, divided the parties' property pursuant to the antenuptial agreement. In addition, the trial court ordered appellant to pay appellee $7,000 as a distributive award.

On appeal, appellant offers one assignment of error:

"The court erred to the prejudice of plaintiff in awarding a distribution to defendant of $7,000 in that it was contrary to the terms of the parties' prenuptial agreement and otherwise an unwarranted abuse of the court's discretion."

Appellant argues that the parties' antenuptial agreement[2] prevented the trial court from making the $7,000 distributive award. The antenuptial agreement states in pertinent part as follows:

"WHEREAS, the parties have agreed that neither party shall have any right, interest, or claim in or to the property of the other, either during their marriage or upon the death of the other, and desire to set forth their said agreement;

" * * *

"Each party is hereby barred from any and all rights, interests, or claims by way of dower, inheritance, descent, distribution, allowance for twelve (12) months' support, right to reside in the mansion house, and all rights or claims as widow, widower, heir, distributee, survivor, or next of kin, and all other

---

1. The trial court restored appellee to her former name, Clarice J. Chambers.

2. The terms "prenuptial agreement" and "antenuptial agreement" are used interchangeably.

rights or claims whatsoever, in or to the estate of the other, whether real or personal, and whether now owned or hereafter acquired, which may, in any manner, arise or accrue by virtue of said marriage."

The agreement also contained an itemization of both of the parties' property. When read in conjunction with the property schedules, the above passages indicate that the parties agreed to receive their separate property upon a divorce. Separate property includes "any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement." R.C. 3105.171(A)(6)(a)(v).

A distributive award is "[a]ny payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support * * *." R.C. 3105.171(A)(1). Trial courts are authorized to create distributive awards to "facilitate, effectuate, or supplement a division of marital property." R.C. 3105.171(E)(1). Once the four components of the distributive award are examined individually, it is clear that the antenuptial agreement, which governs only the parties' separate property, does not bar such an award.

■ First, the distributive award included $3,000 for improvements that the parties made on appellant's house during the marriage. The improvements were paid for out of the parties' joint checking account. Appellee made significant contributions to the joint account each month. In addition, appellee contributed her labor in the form of extensive painting and wood staining. The antenuptial agreement identified the house as appellant's separate property.

Marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). Because the parties paid for the improvements from the joint account, which appellee contributed to, and because the improvements took place during the marriage, any appreciation in value due to the improvements was marital property. The antenuptial agreement addresses only the parties' separate property. Thus, the $3,000 portion of the distributive award, which reimbursed appellee for the home improvements, corresponded to marital property and did not violate the antenuptial agreement.

■ Second, the distributive award included a reimbursement for a $1,000 withdrawal which appellee made from her Merrill Lynch savings account. Appellee used the funds to pay a tax debt of appellant's which accrued before the marriage. The antenuptial agreement designates the Merrill Lynch

account as appellee's separate property. As noted above, the agreement specifies that appellant has no interest in appellee's separate property. Requiring appellant to reimburse appellee for her contribution of separate property to pay appellant's premarital tax debt, then, did not violate the antenuptial agreement. This portion of the distributive award is consistent with the agreement's goal of keeping both parties' interests in their separate property intact.

■ Third, the distributive award included $2,000 for appellee's investment in cattle which were purchased during the marriage with funds from the joint account. Appellant kept possession of the cattle after the divorce. Property acquired during the marriage is marital, not separate, property. R.C. 3105.-171(A)(3)(a)(ii). Thus, the cattle were marital property and subject to division by the trial court. Accordingly, the trial court's award of $2,000 for appellee's interest in the cattle did not conflict with the antenuptial agreement.

■ Fourth, the distributive award included $1,000 for the portion of appellant's pension which accrued during the marriage. Retirement benefits which accrue during a marriage are marital property. R.C. 3105.-171(A)(3)(a)(ii). Because the portion of appellant's pension which accrued during the marriage was marital property, it was also subject to division by the trial court. Therefore, the fourth component of the distributive award did not conflict with the antenuptial agreement.

Based on our examination of the four components of the distributive award, we conclude that the award was not precluded by the antenuptial agreement.

Appellant also argues that the distributive award was an abuse of the trial court's discretion. We disagree.

■ The distributive award concept is consistent with the well-established principle that trial courts have broad discretion when creating an equitable division of property in a divorce proceeding. *Teeter v. Teeter* (1985), 18 Ohio St.3d 76, 18 OBR 106, 479 N.E.2d 890. A reviewing court may alter or reverse a trial court's division of property only upon an abuse of discretion by the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. An abuse of discretion will only be found in a trial court decision that is unreasonable, arbitrary or unconscionable. *Id.*

■ In the present case, R.C. 3105.171 authorized the trial court to make a distributive award. R.C. 3105.171(F) instructs trial courts to consider specific factors when issuing a distributive award. Upon examination of the record, we find that the trial court properly addressed these statutory factors. The trial court not only considered the statutory factors required by R.C. 3105.-171(F), but also identified the four components of the distributive award. The

trial court further explained the reasoning behind each component. Through the distributive award, appellee received a division of marital property and a reimbursement for her separate property. For these reasons, we cannot conclude that the trial court's decision was unreasonable, arbitrary or unconscionable.

Because the distributive award did not violate the antenuptial agreement and because the award was a proper exercise of the trial court's discretion, appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

KOEHLER, P.J., and WILLIAM W. YOUNG, J., concur.