OPINION
Defendant-appellant, Robert Sawyers, appeals a decision of the Brown County Court of Common Pleas awarding plaintiff-appellee, Emily N. Sawyers, a $15,000 distributive award in the property division of a divorce proceeding. Because we find that the trial court did not abuse its discretion in making this distributive award, we affirm.
Robert and Emily Sawyers were married on December 28, 1994 and separated during August of 1996. No children were born to the parties during this marriage. Before the 1994 marriage, Robert and Emily lived together for substantial periods of time beginning in May of 1992. Sometime during 1993, Robert began building a house with the help of Emily's son. This house was substantially completed at the time of the 1994 marriage. Robert and Emily lived in this home as their marital residence before and during the 1994 marriage. Emily's name was not on the note or the mortgage for the home.
Emily testified at trial that she substantially contributed to the value of the marital home. Emily washed, stained, buffed, and polyurethaned nine of the eleven windows in the house. She stained and finished the baseboards and interior doors. Emily also helped to prepare the floor for carpet to be laid and helped lay hard wood on the foyer floor. She sealed and cleaned the tile floors after Robert laid them. Emily painted the walls in the living room, family room, kitchen, and bathroom. She also purchased decorative items for the home and landscaped the surrounding yard.
Emily's daughter, son, and former daughter-in-law all testified that they saw Emily work on the construction and improvement the house. Emily's daughter said that she saw her mother working on the home on at least twenty separate occasions. Robert admitted that Emily had assisted in the construction and improvement of the home but estimated that she only contributed about thirty hours of labor.
Throughout the marriage, Robert and Emily maintained separate banking accounts and never established a joint account. Emily testified that she often paid household bills so that Robert "could use his money on the home." Emily estimated that she purchased ninety percent or more of the household's groceries during the last year that they were living together as husband and wife. However, there was evidence that to some extent both Robert and Emily paid for groceries, utilities, phone service, and insurance. Emily also testified that when she received two lump sum settlements from workers' compensation and social security, the bulk of the money was deposited into Robert's account. Finally, Emily testified that she had charged $2,100 on one of Robert's credit cards in an effort to help support herself during the divorce proceedings because she was receiving only $161 per month from social security disability and was not employed.
The trial court asked both parties to submit a property statement. Emily's property statement was fairly detailed and provided values for each piece of property listed. Robert's property statement affirmed or refuted selected properties mentioned in Emily's statement. In his property statement, Robert argued that Emily had no claim to his house but did not refute the $120,000 estimated value as set forth in Emily's property statement.
At the conclusion of the evidence, the trial court determined that pursuant to R.C. 3105.171(A)(6)(a)(ii),[1] the marital residence was Robert's separate property. The trial court found that for purposes of the marital distribution, "during the marriage" would equitably be determined to be the period of time from when the parties began living together on or about May of 1992 and during the time which Emily contributed to the construction, improvements, and appreciation of the home, until the parties separated in August of 1996. Under R.C.3105.171(A)(3)(a)(iii),[2] a portion of the residence was deemed to be marital property, as it represented the appreciation of separate property due to labor, monetary, or in kind contribution during the marriage. The trial court awarded Emily a distributive award of $15,000, pursuant to R.C. 3105.171(E)(2). The marital residence, as separate property of Robert was awarded to Robert, subject to the distributive award for Emily. Thereafter, Robert filed this appeal, raising one assignment of error for our review.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT ROBERT SAWYERS IN AWARDING PLAINTIFF-APPELLEE EMILY N. SAWYERS FIFTEEN THOUSAND DOLLARS ($15,000.00) AS A DISTRIBUTIVE AWARD FOR HER INTEREST IN DEFENDANT-APPELLANT ROBERT SAWYERS' SEPARATE PROPERTY.
Robert argues that the trial court's decision to grant Emily a $15,000 distributive award was an abuse of discretion. Robert asserts that the trial court did not record its findings in sufficient detail to understand the rationale behind the distributive award calculation and failed to consider damage that Emily allegedly caused to Robert's property.
A distributive award is defined in R.C. 3105.171 as "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support * * *." R.C. 3105.171(A)(1). While the trial court "shall disburse a spouse's separate property to that spouse," R.C. 3105.171(D), "the court may make a distributive award [from separate property] in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome." R.C. 3105.171(E)(2).
The trial court must consider the factors set forth in R.C.3105.171(F) when determining whether to make and the amount of any distributive award. These factors are as follows:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of the property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
A trial court is vested with broad discretion to decide whether a distributive award of a party's separate property is appropriate and equitable pursuant to R.C. 3105.171(E). Adams v.Chambers (1992), 82 Ohio App.3d 462, 466, citing Teeter v.Teeter (1985), 18 Ohio St.3d 76. An appellate court may change or reverse a distributive award made by a trial court only upon a demonstration of an abuse of discretion. Id. Abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
The trial court granted a distributive award to Emily, in part, from a finding of marital property under R.C.3105.171(A)(3)(a)(iii). Following the plain language of R.C.3105.171(A)(3)(a)(iii), when either spouse makes a labor, money, or in-kind contribution that causes the value of separate property to increase, that increase is deemed marital property. (Emphasis added.) Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 400, citing Kotkowski v. Kotkowski (May 19, 1995), Portage App. No. 94-P-0027, unreported.
When making the distributive award in this case, the trial court noted that a division of the marital property would be impractical or burdensome. See R.C. 3105.171(E)(2). The trial court explained that the amount of the distributive award was determined after consideration of the appreciation of the home as marital property from Robert's separate property, as well as the value of the personal property which Robert was to receive by order of the trial court. The trial court estimated that the value of items of marital personal property awarded to Robert exceeded $6,500. The trial court also found that Emily had contributed a significant portion of her $3,917.19 workers' compensation settlement and $1,081 social security settlement to make a down payment on Robert's pickup truck. Therefore, approximately $11,500 of the distributive award was offset by marital property given to Robert and settlement money that Robert benefited from during the marriage. The trial court also acknowledged Emily's contributions to the construction and improvement of the marital home in making the distributive award. Pursuant to R.C. 3105.171(A)(3)(a)(iii), the trial court found that during the marriage Emily and Robert's labor, money, and in-kind contributions increased the value of Robert's home and that this increase was marital property. Although it is not explicitly stated in the judgment entry, it appears that Emily's share of this increase was approximately $3,500. The trial court did not award Emily any spousal support.
Robert asserts that the trial court also failed to consider damage that Emily allegedly caused to Robert's property. At trial Emily admitted that she had "keyed" the back bumper of Robert's truck, but denied causing any other damage to Robert's property. The damage to Robert's truck was estimated to be $381.60.
We find that there was competent, credible evidence to support the trial court's decision to grant Emily a distributive award in the amount of $15,000. Therefore, the trial court's act was not an abuse of discretion and Robert's assignment of error is without merit.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] 1. R.C. 3105.171(A)(6)(a) states the following:
 "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any one of the following: * * *
 (ii) Any real or personal property interest in real or personal property that was acquired by one spouse prior to the date of the marriage.
[2] 2. R.C. 3105.171(A)(3)(a) states the following:
 "Marital property" means, subject to (A)(3)(b) of this section, all of the following: * * *
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.