JOURNAL ENTRY and OPINION
{¶ 1} Appellant Norman Marx appeals the judgment of the Cuyahoga County Court of Common Pleas Domestic Relations Division denying his motion to modify spousal support. On appeal, he assigns the following error for our review:
 {¶ 2} "I. When the lower Court [sic] made the findings that appellant's gross income in 2001 was $41,562 and in 2002 was $49,374, which findings were contrary to the Magistrate's finding that appellant's gross income after his retirement on July 6, 2001 was $17,458.40 and other findings in support, and when the difference between the lower court's findings and the magistrate's finding was based solely on bank deposits, the lower court's findings were against the manifest weight of the evidence and its ruling that appellant pay spousal support to Appellee of $55.00 per month from July 6, 2001 and thereafter pay spousal support of $250 per month was an abuse of discretion."
 {¶ 3} Having reviewed the record and pertinent law, we reverse the judgment of the trial court. The apposite facts follow.
 {¶ 4} Appellant is seventy-eight years old and appellee is seventy years old. The parties married July 1960 and one child, now emancipated, was born to the marriage. In April 2001, after forty years, the marriage terminated.
 {¶ 5} Pursuant to an in-court agreement incorporated into the divorce decree, the parties settled all issues relevant to the divorce. The agreement provided appellee would receive $31,500 of the $40,000 net proceeds from the sale of the marital home. The agreement specified the parties would divide equally appellant's pension already in the payout phase. Additionally, appellant would continue to pay the lease and insurance on appellee's automobile until the lease expired. Further, the court ordered appellant to pay $700 per month to appellee as spousal support. The spousal support would increase to $1,000 upon the expiration of the automobile lease.
 {¶ 6} Finally, the parties included the following language in the spousal support provision:
 {¶ 7} "The parties acknowledge that because of their ages and health problems, either party may hereafter retire or be unable to work, either of which shall be a significant change in circumstances invoking the continuing jurisdiction of the court."
 {¶ 8} In July 2001, appellant retired, moved to Delray Beach, Florida and later filed a motion to modify spousal support.
 {¶ 9} On March 6, 2002, appellant traveled to Ohio for the evidentiary hearing, but appellee was unprepared to proceed. The parties, through their respective counsels, agreed to take appellant's deposition by telephone and submit said deposition at the hearing as testimony. This was done to avoid having appellant travel again to Ohio.
 {¶ 10} At the hearing on May 10, 2002, appellee testified she worked three days each week as a sales associate with Nordstrom. She stipulated her income from Nordstrom was $13,966.87 in 1998, $21,157.51 in 1999, $27,095.62 in 2000, $32,997.70 in 2001, and year-to-date earnings of $8,536.67 as of April 30, 2002. Additionally, she received $6,858 in Social Security Benefits and $127.70 per month as her half share of appellant's pension.
 {¶ 11} Appellee testified her monthly expenses include apartment rent of $985, utilities of $114, health insurance of $113, out of pocket prescription cost of $340, and food cost of $750.
 {¶ 12} Finally, appellee testified she was a cancer survivor, suffered from osteoporosis, and takes several prescription medications daily. Except for time off during two bouts with the flu, she has not missed any days from work due to health problems, but finds it difficult to remain on her feet for eight hours at a time.
 {¶ 13} On May 17, 2002, during the telephonic deposition, appellant testified in April 2001, he notified his employer he intended to retire. He testified he decided to retire because he was working six days per week from 10:00 a.m. until 9:00 p.m., and between the job and the divorce it was just too much for him. He stated he suffers from sleep apnea and occasionally stops breathing for four or five seconds during sleep; he has back problems and has been advised to have an operation, but declined because the procedure is not foolproof; is blind in his left eye, has difficulty driving at night and reading, and has been advised to have a cornea transplant; and his hearing is severely diminished in his left ear. He also testified to taking several prescription medications including Zokor for the back pain and Prozac as a mood stabilizer.
 {¶ 14} He testified he worked twice since retiring. Once, he came back to Cleveland to work for his previous employer during a Mattress City and Furniture store opening celebration; he earned $800. Additionally, he worked for Power Team in Florida selling furniture and earned $600. He stated he had not worked since 2001.
 {¶ 15} Appellant stated his sole income since retiring was Social Security in the amount of $1,127 per month which would increase to $1,327 per month after he completes a payment plan to the Internal Revenue Service. In addition to his Social Security income, he receives a half share of a pension plan totaling $127.70 monthly.
 {¶ 16} He stated he shares his apartment with a female companion who pays the rent and buys the food, and he pays the utilities. He said much of his income goes toward car payments and insurance. He pays $281.56 per month to lease and $75.92 to insure appellee's 2000 Toyota Camry. The rest of his budget goes toward paying off old credit card balances, life insurance, prescription drugs, and storage costs.
 {¶ 17} When questioned about eleven bank deposits in the second half of 2001 and the first half of 2002, he testified besides the monthly Social Security deposits, the others represented an automobile lease deposit refund, and loans from both his female companion, and his brother. He affirmatively identified the source of the deposits made in 2001, but was unsure about the source of the deposits made in 2002.
 {¶ 18} On June 21, 2002, the magistrate filed her decision recommending the trial court grant the motion to modify spousal support. The magistrate specifically found appellee's total income to be $35,473 as opposed to appellant's $17,458.40. The magistrate also found it could not be inferred that the deposits to appellant's bank account constituted monies he received from work related activity.
 {¶ 19} Thereafter, appellee filed Objections to the magistrate's decision. On September 25, 2003, the trial court sustained in part appellee's objections. The trial court stated the parties' income for 2001 were substantially similar, thus justifying reducing the spousal support to $55 per month. The trial court extrapolated the deposits totaling $5,575 for the first two months of 2002 and determined appellant's total income to be $49,374. The trial court also extrapolated appellee's income from Nordstrom through April 30, 2002, and determined her total income, including Social Security, to be $34,144 for 2002.
 {¶ 20} The trial court therefore ruled appellant's spousal support would be $55 per month retroactively from July 6, 2001, through December 31, 2001, and ordered him to pay thereafter $250 per month as spousal support; a reduction from $700 to $250 per month. Appellant now appeals.
 {¶ 21} In his sole assigned error, appellant argues the trial court erred when it continued spousal support at $250. Appellant argues the trial court should have accepted the magistrate's order in totality; wherein the magistrate held appellant had established a change of circumstances and spousal support should be reduced to "zero." We agree.
 {¶ 22} A trial court is generally afforded wide latitude in deciding spousal support issues.[1] Where modification of a spousal support award is requested, the threshold question is whether the trial court retained jurisdiction to modify the provisions of its order and whether the circumstances of a party have changed.[2] In the present case, the trial court specifically retained jurisdiction to modify the provisions of the decree.
 {¶ 23} R.C. 3105.18(E) states that the court may modify the amount or terms of a spousal support order upon a determination that "the circumstances of either party have changed." A "change of circumstances" includes, but is not limited to "* * * any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses."[3] To warrant a modification," the change must be one that is substantial and not contemplated at the time of the prior order."[4]
 {¶ 24} An appellate court reviews the modification of spousal support under an abuse of discretion standard.[5] The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. An abuse of discretion exists when the decision of the court is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.[6] Absent such a showing, the trial court's judgment will be affirmed.[7] When applying the abuse of discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court.[8]
 {¶ 25} As stated, in order to obtain a modification of spousal support, appellant must show a substantial change in circumstances. The facts presented above leave no doubt appellant has experienced a change in circumstances since the final decree of divorce was rendered. The magistrate found appellant's income decreased and his expenses increased after he retired. However, in order to justify modification of the spousal support award, this decrease or change in appellant's income "must" not have been "voluntary."[9]
 {¶ 26} In determining whether or not retirement is a "voluntary" or involuntary action justifying a reduction or modification of spousal support, the appellate courts of Ohio have held that "[a] change in income due to retirement reasonably in advance of the expected date of retirement does provide a basis for modification of alimony if it was not done in an attempt to avoid a court ordered obligation to an ex-spouse."[10]
 {¶ 27} The record before this court reveals appellant was well past retirement age at the time of the divorce decree. Additionally, as part of the in-court agreement during the divorce, both parties acknowledged because of their ages and health problems, either may thereafter retire or be unable to work, either of which shall be a significant change in circumstances. Therefore, we conclude appellant's decision to retire at age seventy-four years old and relocate to Florida was not done to purposely avoid his continuing spousal support obligation to appellee; thus he did not "voluntarily" decrease his income, which resulted in a substantial change in circumstances.
 {¶ 28} Additionally, we do not think appellant's decision to retire contemporaneously with the divorce proceeding was in bad faith. He explained he had reached a point mentally and physically where working five or six days per week from 9:00 a.m. to 10:00 p.m., was too consuming, and coupled with the stress of the divorce, he thought it best to "walk away from Cleveland" We remain mindful appellant was seventy-six years old at the time of the hearing, and thus hesitate to dispute this.
 {¶ 29} Having agreed with the trial court that appellant established a change of circumstances requiring an alteration of spousal support, we review whether the trial court erred when it imputed $49,374 as yearly income to appellant and continued the spousal support at a reduced rate of $250. We conclude the trial court erred in imputing income to appellant and hold that the spousal support should be terminated.
 {¶ 30} We are mindful that the trial court was troubled by the monies in appellant's account for the first two months of 2002. The trial court determined that these amounts were indeed income and determined appellant could make these amounts for the entire year; consequently, imputing income to him based on those deposits.
 {¶ 31} Appellant argues these are loans from his brother and friend. We see nothing in the record to disprove this. In fact, a review of the bank statements for the first two months of 2002, reveals a pattern of deposits followed approximately two or three days later with a debit substantially equal to the amounts deposited.[11] One could conclude that these patterns are indicative of borrowing activities rather than employment related endeavors, which is why the magistrate felt it was difficult to conclude that the deposits were work-related or derived from some form of employment.
 {¶ 32} Assuming arguendo that they were, the standard for imputing income to a spouse is to be determined by the spouse's employment potential, probable earnings based on the spouse's recent work history, job qualifications, and the prevailing job opportunities and salary levels in the community in which the spouse resides.[12]
 {¶ 33} Here, the trial court imputed income to a then seventy-six-year-old man who was retired and admittedly suffered from health issues. The trial court imputed $49,374 without any evidence establishing that he could earn this amount or that he had previously earned that amount. We believe the trial court needed sufficient evidence of employment; for example, it needed employment checks, tax returns, contracts, or something concrete, showing work-related income. The bank deposits failed to demonstrate work-related income activity. Consequently, the trial court abused its discretion; accordingly, we reverse its judgment and remand this matter to the trial court to act in a manner consistent with this opinion; that is, termination of the spousal support.
Judgment reversed and remanded.
This cause is reversed and remanded.
It is, therefore, ordered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Gallagher, J., concur.
[1] Bolinger v. Bolinger (1990), 49 Ohio St.3d 120; Cherryv. Cherry (1981), 66 Ohio St.2d 348.
[2] Wolding v. Wolding (1992), 82 Ohio App.3d 235, 239.
[3] See R.C. 3105.18(F).
[4] Tremaine v. Tremaine (1996), 111 Ohio App.3d 703.
[5] Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
[6] Nakoff v. Fairview General Hospital (1996),75 Ohio St.3d 254, 256-257.
[7] Masters v. Masters (1994), 69 Ohio St.3d 83.
[8] In re Jane Doe 1 (1991), 57 Ohio St.3d 135, citing Berkv. Matthews (1990), 53 Ohio St.3d 161.
[9] Melhorn v. Melhorn, (January 30, 1990) Montgomery App. No. 11139, citing Nash v. Nash (1945), 77 Ohio App. 155.
[10] Melhorn at 2; See, generally, Reed v. Reed, (Feb. 16, 2001) Greene App. No. 2000CA81; Kozlevchar v. Kozlevchar (May 18, 2000), Cuyahoga App. No. 76065; Rochow v. Rochow (May 4, 1999), Mahoning App. No. 97 CA 103; Wolf v. Wolf (March 12, 1999), Greene App. No. 98-CA-131.
[11] Appellant's January 2002 bank statement revealed a deposit of $500 on 1/17/2002, a deposit of $500 on 1/19/2002, and on 1/22/2002 debit of $1,500. His February bank statement revealed on 2/15/2002 appellant incurred an overdraft charge when the account balance was $23.82. On 2/19/2002, a deposit of $1,900 and between 2/20/2002 and 2/27/2002, appellant's debits totaled $1,501.
[12] Rock v. Cabral (1993), 67 Ohio St.3d 108.