[Cite as *Regalbuto v. Regalbuto*, 2013-Ohio-5031.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 99604

---

# CHERYL REGALBUTO

PLAINTIFF-APPELLANT

vs.

# MICHAEL REGALBUTO

DEFENDANT-APPELLEE

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. CP D-333745

**BEFORE:** E.A. Gallagher, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 14, 2013

**ATTORNEY FOR APPELLANT**

Laurence A. Turbow
Laurence A. Turbow, L.P.A., Inc.
4403 St. Clair Avenue
Suite 300
Cleveland, OH    44103

**ATTORNEY FOR APPELLEE**

Mark A. Ziccarelli
Ziccarelli & Martello
8754 Mentor Avenue
Mentor, OH    44060

EILEEN A. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant Cheryl Regalbuto ("Cheryl") appeals from the decision of the Cuyahoga County Domestic Relations Court. Cheryl argues the trial court conducted an unfair trial and that it erred in ordering a distributive award, in failing to find Michael Regalbuto ("Michael") in contempt and in not ordering an "appropriate and reasonable" amount of spousal support. Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2} Cheryl and Michael Regalbuto were married on July 9, 1990, and separated in May 2011. The parties had five children, two of whom were un-emancipated issue of the marriage at the time of the final hearing. The parties filed an agreed entry concerning the two children settling all matters regarding the allocation of parental rights and responsibilities by providing for shared parenting.

{¶3} Both parties have high school educations with no additional certification or specialized training beyond high school. Cheryl was employed full time at Progressive Insurance Company for seven and one-half years and when she became pregnant with their second child she quit work and did not return to the workforce until 2005.

{¶4} At the time of the trial, Cheryl was self-employed as a provider of home decorating services and a seller of home furnishings for two different businesses that she owns, Lombard Classic Interiors and Timeless Interiors. The magistrate found her earnings at the time of the hearing to be approximately $25,000.

{¶5} Michael is self-employed as a home builder, but because of the economy

and decline in new home building, his business income has decreased. The magistrate determined that Michael's earnings at the time of the hearing were approximately $59,000, which included his trades work but also distributive income from ownership interests in various companies.

{¶6} The parties own a home located at 796 Village Trail in Gates Mills, Ohio. The magistrate determined that the property was on the market with a listing price of $1.475 million with three outstanding mortgages totaling approximately $837,000 plus a real estate tax lien of $25,000. The magistrate noted a foreclosure judgment on a condominium that the parties had owned in Bonita Springs, Florida in the amount of $162,775. Further, the magistrate determined that there were credit card debts owed to Bank of America, Discover, American Express, Chase, Capital One, Dillard's and Saks Fifth Avenue totaling approximately $97,000.

{¶7} Because the parties' income drove so many of the issues in the divorce proceedings, the magistrate found it necessary to review the significant changes that took place over the years resulting in the financial predicament in which the parties found themselves at the time of trial. The magistrate wrote as follows:

> These parties have been dealt two significant financial blows within the last several years. The first was the collapse of an "IPOF" fund, in which the parties had invested approximately $800,000. With the hopes of large and certain returns from this fund, the parties had even invested monies that they took out as a home equity loan against their marital residence. This investment was ultimately discovered to be a Ponzi scheme, and the parties, along with a multitude of their friends and family, are awaiting a return of mere pennies on the dollar from a receiver appointed by federal court.

The collapse of this fund also had consequences with gift monies that Defendant's parents used to regularly give the parties. Prior to the collapse of the fund in late 2005, the parties testified that Defendant's parents would give them upwards of $20,000 per year in monetary gifts. Defendant testified that his parents lost eight million dollars in this IPOF and have not been able to give any monetary gifts to them since the collapse.

Additionally, the economy and home building decline has significantly decreased the parties' self-employment business income.

{¶8} The parties agreed by journal entry that until the marital residence sold, both parties would equally contribute to the monthly bills associated with the marital residence with Cheryl contributing an additional $500 per month for payment on the credit cards. Prior to trial, the court found Cheryl in contempt for failing to pay her one half of the marital expenses as well as the additional $500. Additionally, after Cheryl sold a chandelier from the marital residence, the court found her in contempt for violating the restraining order issued by the court preventing her from removing the marital furniture, furnishings, goods and appliances from the marital home.

{¶9} The trial was set for hearing for five days commencing June 25, 2012. By agreement of counsel, each party was to receive two and one-half days to present their case. After hearing the testimony, the magistrate issued her findings of fact and conclusions of law. Both parties objected but the trial court adopted the magistrate's decision and journalized a final entry granting the divorce, determining all property issues, allocating parental rights and responsibilities and awarding spousal support.

{¶10} Cheryl appeals, raising the following assignments of error:

Assignment of Error I

The trial court erred/abused its discretion by conducting an unfair trial, in violation of appellant's due process rights.

## Assignment of Error II

The trial court erred and/or abused its discretion by finding appellant guilty of financial misconduct and issuing a distributive award to appellee.

## Assignment of Error III

The trial court erred and/or abused its discretion by failing to find the appellee in contempt of its prior orders.

## Assignment of Error IV

The trial court erred/abused its discretion by awarding an inappropriate and unreasonable amount of spousal support to the appellant.

{¶11} Although she raises numerous assignments of error, each involve the trial court's adoption of the magistrate's findings of fact and conclusions of law. Accordingly, each involves the same standard of review. An appellate court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232; *Dyrdek v. Dyrdek*, 4th Dist. Washington No. 09CA29, 2010-Ohio-2329. We will not disturb the trial court's decision unless it is arbitrary, unreasonable, or unconscionable. *See, e.g.*, *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. *Marx v. Marx*, 8th Dist. Cuyahoga No. 83681, 2004-Ohio-3740. Therefore, it is with this standard of review in mind, that we address the assigned errors.

**{¶12}** In her first assigned error, Cheryl argues the trial court abused its discretion by conducting an unfair trial. Specifically, she argues that the magistrate unfairly allocated the time between the parties thereby denying her due process rights. We disagree.

**{¶13}** It is well settled that a trial court has broad discretion to control the proceedings to enable it to exercise its jurisdiction in an orderly and efficient manner. *See State ex rel. Butler v. Demis*, 66 Ohio St.2d 123, 128-129, 420 N.E.2d 116 (1981). A magistrate is likewise authorized to regulate the proceedings and to do everything necessary for the efficient performance of its responsibilities. Civ.R. 53(C)(2). Nonetheless, the proceedings must be managed in a manner that fulfills the court's duty to promote the accuracy and fairness of the hearing. *Loewen v. Newsome,* 9th Dist. Summit Nos. 25559, 25579, 2012-Ohio-566. Evid.R. 611 provides that the court "shall exercise reasonable control" over the mode and manner of interrogation of witnesses and presentation of evidence so as to avoid a needless consumption of time and/or harassment of witnesses, but also in a manner that preserves the truth-seeking function of the proceedings. Evid.R. 611(A). Evid.R. 611(B) further provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." *Loewen*.

**{¶14}** In the present case, the parties agreed to five days of trial and that each party would have two and one-half days to present their case. The trial court journalized this agreement in its March 20, 2012 order that read that each party "will be

held accountable to present their cases within this one week time frame." In support of her argument that the magistrate violated her due process rights, Cheryl identifies instances in the record where the magistrate agreed to give her additional time but never did and she claims that the magistrate ended the trial before she finished her cross-examination of appellee. Cheryl cites to the cases of *Cohen v. Cohen,* 5th Dist. Fairfield No. 99CA52, 2001 Ohio App. LEXIS 202 (Jan. 22, 2001), and *Loewen v. Newsome*, in support of her assigned error.

{¶15} *Cohen v. Cohen* was a child custody case in which the court scheduled the hearing for three days, allowed the appellee to present his case for two of the three days and then prevented the appellant from testifying or cross-examining the appellee. The court in *Cohen* determined that the trial court's actions violated appellant's due process rights. In *Loewen,* the magistrate informed the parties that on the second date of the hearing it would start at 9 a.m. and continue as long as it took to complete the parties' case. However, the magistrate declared the hearing closed at 4:12 p.m. without any prior notice, without allowing for the parties to admit their exhibits or to allow the appellant to testify on her behalf or cross-examine appellee. The court in *Loewen* determined that the court's unfair allocation of time violated the appellant's due process rights.

{¶16} The instant case is distinguishable from both *Cohen* and *Loewen*. Cheryl agreed to a five day trial knowing that she would have to present her case within the two and one-half day time frame. The court allowed her to testify upon direct examination,

present witnesses and cross-examine appellee. A review of the record and the magistrate's thorough decision reveals that the magistrate directed the trial in an orderly and efficient manner and there is no evidence that the magistrate's actions violated Cheryl's due process rights.

{¶17} Appellant's first assignment of error is overruled.

{¶18} In her second assignment of error, appellant argues the trial court erred in ordering her to pay a distributive award. We disagree.

{¶19} The magistrate ordered a distributive award to Michael under R.C. 3105.171(E)(1) and (E)(4) in the amount of $8,832.00 based on appellant's sale of a chandelier.

{¶20} R.C. 3105.171 sets forth a court's authority to issue a distributive award as follows:

> (E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property.
>
> * * *
>
> (E)(4) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

{¶21} The distributive award concept is consistent with the well-established principle that trial courts have broad discretion when creating an equitable division of property in a divorce proceeding. *Teeter v. Teeter*, 18 Ohio St.3d 76, 479 N.E.2d 890 (1985); *Adams v. Chambers*, 82 Ohio App.3d 462, 612 N.E.2d 746 (12th Dist.1992);

*Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255. A reviewing court may alter or reverse a trial court's division of property only upon an abuse of discretion by the trial court. *Blakemore*. An abuse of discretion will only be found in a trial court decision that is unreasonable, arbitrary or unconscionable. *Id*.

{¶22} In the present case, issues concerning the chandelier arose as early as February 2012 during Cheryl's deposition. At that time, she testified that she sold the chandelier in January 2012 to Mark Koski for $2,000. Because the chandelier was marital property, the trial court found Cheryl in contempt for this action. In addition, after the contempt citation, the trial court learned that Cheryl sold the chandelier for more than the $2,000 to which she had originally testified and to Mike Sylvestor. Mr. Sylvester testified that he had an invoice and had paid that invoice to Lombard Classic Interiors in the amount of $6,416. The court noted that the invoice was different from that previously supplied by Cheryl in both the amount of the sale ($2,000 versus $6,416) and the description of the item (chandelier versus wall art). The court found Cheryl's testimony surrounding the sale of the chandelier not credible and, quite frankly, we find her testimony was perjurious.

{¶23} Michael requested a distributive award based on the events surrounding the chandelier and the court agreed. Specifically, the court stated

> the actions of Plaintiff in concealing the true whereabouts of the chandelier, the true purchaser of the chandelier, along with the actual sales prices of the chandelier, led Defendant on a wild goose chase to ascertain the terms of the actual sale.

{¶24} We find no error with the court's distributive award. In making the

award, the court discussed at length appellant's misconduct as it related to the sale of the chandelier. Although Cheryl argues that she immediately returned the chandelier to the marital home, this does not discount her actions in concealing the whereabouts of the chandelier, the purchaser of the chandelier and the sale price of the chandelier to both appellee and the trial court. Appellant's second assignment of error is overruled.

{¶25} In her third assignment of error, appellant argues that the trial court erred in failing to find Michael in contempt of its prior orders. In particular, she argues the trial court should have found Michael in contempt for failing to pay the mortgage in violation of the court's March 24, 2011 agreed entry. We find no merit to this assigned error.

{¶26} On March 24, 2011, the magistrate issued a temporary order reading as follows:

> [U]ntil such time as marital residence sells, both parties shall equally contribute to the following monthly bills associated with the marital residence: all mortgages, utilities, real estate taxes as they become due, repairs and maintenance as agreed by the parties and insurance.

{¶27} Appellant points out that the magistrate used this same order to find her in contempt when she failed to make the required contributions earlier in the proceedings. She argues that it was error for the court not to find appellee in contempt for the same behavior.

{¶28} Appellant presented no evidence as to the total amount appellee failed to pay, although he admitted during trial that he stopped making the mortgage payments. However, Michael supplemented this admission with Exhibit QQQQ, a summary of monthly bills that he paid from April 2011 until June 2012. He testified that he paid

$68,143.90 under the temporary support order and that although he stopped paying the monthly mortgage payments, he continued to pay what he could.

**{¶29}** In reviewing the motion for contempt, the magistrate reviewed the parties' incomes and the temporary support-ordered monthly payments and determined that it was not possible for the parties to meet the current monthly order on their combined incomes. The magistrate concluded as follows:

> Since the parties find it equally impossible to pay the current marital debt that was based on a previous lifestyle no longer attainable on their current incomes, the Magistrate denies the motion for contempt.

**{¶30}** We find no error with the magistrate's decision denying appellant's motion for contempt. The impossibility of performance is generally a valid affirmative defense to a contempt action. *Gauthier v. Gauthier*, 12th Dist. Warren No. CA2011-05-048, 2012-Ohio-3046. As stated by this court in *Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, "a party must take all reasonable steps within [his] power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why [he] is unable to comply with the court's order."

**{¶31}** Michael testified that he could no longer meet the required monthly obligations and submitted an exhibit illustrating what he had paid in the past. The magistrate, after reviewing the parties' income and expenses, concluded that neither party could meet the currently monthly order on their combined incomes and denied the motion for contempt. We find no error with this decision and thus overrule appellant's third assignment of error.

**{¶32}** In her fourth and final assigned error, appellant argues the trial court erred by awarding an "inappropriate and unreasonable" amount of spousal support. We disagree.

**{¶33}** A trial court has wide latitude in awarding spousal support. *Abram v. Abram*, 9th Dist. Medina No. 3233-M, 2002-Ohio-78; *Kapadia*. As such, absent an abuse of discretion, an appellate court will not reverse a trial court's decision regarding spousal support. *Id.*

**{¶34}** Despite the trial court's latitude in awarding spousal support, its evaluation is constrained by R.C. 3105.18, which requires consideration of certain relevant factors. *Abram; Kapadia*. R.C. 3105.18(C)(1) outlines the factors that the trial court must consider when determining whether to order an award of spousal support. R.C. 3105.18(C)(1) provides:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶35} A trial court is not required to enumerate each factor in R.C. 3105.18(C)(1), but must merely provide a sufficient basis to support its award. *Kapadia*.

{¶36} Appellant argues the trial court failed to consider Michael's earning ability, the couple's standard of living and loss income production capacity. Primarily, as noted above, R.C. 3105.18(C)(1) does not require a trial court to enumerate each factor of the statute. Nonetheless, the court did consider these three specific factors. As it relates to Michael's earning capacity, the court noted his current income and

income sources and concluded that his separate property interests along with his self-employment businesses could experience exponential growth if the economy rebounded. The court elected to maintain jurisdiction over the amount of spousal support for the implied purpose of modification should circumstances change. Second, the court noted the couple's standard of living prior to the collapse of the IPOF fund and their current financial predicament, which the court noted as incapable of paying their monthly debt obligations. Lastly, the court concluded that appellant failed to put forth evidence of her earnings at Progressive so the court was precluded from making an assessment of the extent of that lost amount.

{¶37} A close review of the record on appeal reveals that the trial court conducted an exhaustive analysis of the factors of R.C. 3105.18 and, therefore, we find no abuse of discretion in its decision to award spousal support to Cheryl in the amount of $200 per month.

{¶38} Appellant's fourth and final assignment of error is overruled.

{¶39} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
TIM McCORMACK, J., CONCUR