

**In re T.H.**

[Cite as *In re T.H.*, 192 Ohio App.3d 201, 2011-Ohio-248.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 24176.

Decided Jan. 21, 2011.

Thomas A. Hansen, for appellant, David Huston.

John Paul Rion, for appellee, Joni L. Kraus–Hood.

DONOVAN, Judge.

{¶ 1} Plaintiff-appellant, David L. Huston, appeals a decision from the Montgomery County Court of Common Pleas, Juvenile Division, overruling his objections and adopting the decision of the magistrate granting custody of the parties' minor child, T.H., to defendant-appellee, Joni L. Kraus–Hood ("Hood").

{¶ 2} The magistrate's decision awarding Hood primary custody of T.H. was filed on September 23, 2009. The magistrate's decision, however, failed to address the subject of Huston's visitation rights with T.H. Accordingly, on September 28, 2009, the magistrate filed an amended decision awarding Huston standard visitation rights with T.H. The judgment and entry adopting the decision of the magistrate was filed by the trial court on June 30, 2010. On July 29, 2010, Huston filed a timely notice of appeal with this court.

I

{¶ 3} Huston and Hood were in a relationship, but not married, prior to the birth of their daughter, T.H., on November 15, 2007. At the time of T.H.'s birth, Hood was incarcerated in the Montgomery County Jail for violating the terms of her probation in a separate criminal case. While she was in jail, Hood went into early labor and gave birth to T.H. via an emergency Caesarian section operation performed at Miami Valley Hospital. At the time of her birth, T.H. weighed approximately two pounds. Due to her precarious physical condition, T.H. remained in the intensive care unit at Miami Valley Hospital for approximately two months after her birth. After a brief recovery period, Hood returned to jail in order to complete the remainder of her sentence. Hood was released from jail shortly before T.H. was released from the hospital and was home to receive the child when she arrived.

{¶ 4} Huston and Hood lived together with T.H. until October 2008, when they split. Huston sought temporary custody of T.H. The magistrate awarded Huston temporary custody of T.H. pending the outcome of a full hearing. During this period, Hood was granted liberal visitation with T.H., from 9:00 a.m. until 3:00 p.m. Monday through Friday and every other weekend. Evidence was adduced at the hearing that established that Huston and Hood suffered from physical ailments for which they were both prescribed various medications. We also note that the guardian ad litem ("GAL") appointed in this case conducted an investigation and determined that it was in the best interests of T.H. for Hood to be granted custody.

{¶ 5} Hearings on this matter were held before the magistrate on February 12 and August 26, 2009. After weighing the evidence submitted by the parties, the magistrate granted legal custody of T.H. to Hood and granted standard visitation rights to Huston. Huston subsequently filed objections to the magistrate's decision on October 5, 2009. Huston filed supplemental objections to the magistrate's decision on February 19, 2010. On June 30, 2010, the trial overruled Huston's objections and adopted the decision of the magistrate granting custody to Hood in its entirety.

{¶ 6} It is from this decision that Huston now appeals.

II

{¶ 7} Because they are interrelated, Huston's first and second assignments of error will be discussed together as follows:

{¶ 8} "The trial court and the magistrate erred and committed prejudicial error in not allowing the appellant the court ordered time to present his evidence."

{¶ 9} "The trial court erred and committed prejudicial error when limiting appellant's testimony to only fifteen (15) minutes and was an abuse of discretion."

{¶ 10} In his first assignment of error, Huston contends that the trial court erred in adopting the magistrate's decision when the magistrate limited the time in which he could present evidence at the hearing to one-half day of testimony on February 12, 2009, and one and one-half hours of testimony on August 26, 2009. Huston asserts that the time limitations placed upon him by the magistrate restricted his ability to call all the witnesses he had subpoenaed to testify on his behalf. Huston also argues that because of the time limitation set by the magistrate, he was unable to adequately present his own testimony, as well as the testimony of the witnesses he was able to call.

{¶ 11} The magistrate limited the length of Huston's case-in-chief in the following exchange at the hearing on August 26, 2009:

{¶ 12} "The Court: * * * We're here on multiple motions. At this point the Court has made the determination that this trial needs to end today. Mr. Hansen, you'll have until 10:00 o'clock—that's one hour—to complete your case in chief. We have already had multiple half-days of trial and multiple witnesses. Ms. Rutter, you'll begin your case in chief at 10:00 o'clock and be done by 1:30.

{¶ 13} "Ms. Rutter: Yes, Your Honor.

{¶ 14} "Mr. Hansen: You Honor, for the record, I would like to interpose my objection for the Court limiting so much—close time. This case was continued last week. I had a half day. It was continued, and—

{¶ 15} "The Court: But, Mr. Hansen, you weren't going to be given that half day. You were going to be given an hour, and we were going to go till 6:00 o'clock. So I'm not actually taking away any time. And—and—

{¶ 16} "Mr. Hansen: Well, it was my under—and not to argue, Your Honor, but I have to make a record here.

{¶ 17} "The Court: Sure.

{¶ 18} "Mr. Hansen: It was my understanding that last Tuesday was to be a half day for me; this Wednesday was to be a half day for the—for the other side. So—

{¶ 19} "The Court: I'm sorry that you misunderstood. All right.

{¶ 20} "Mr. Hansen: Okay. For the record, Your Honor—

{¶ 21} "The Court: I understand. Your objection is noted and made for the record, but I think we need to—to get going.

{¶ 22} "Mr. Hansen: Okay."

{¶ 23} During the hour that the magistrate allotted to him, Huston was able to present the continued testimony of his sister, Joan Cordoza, as well as the testimony of three additional witnesses. When Huston's hour had passed, the Court initiated the following exchange:

{¶ 24} "The Court: Okay, Mr Hansen, I believe your time has ended.

{¶ 25} "Mr. Hansen: I need to call the—the father to the stand, Your Honor. I think that's only fair. I can't—

{¶ 26} "The Court: Mr. Hansen, you've had many days of—of testimony already—

{¶ 27} " * * *

{¶ 28} "The Court: — so it's not a question of fairness. It's a question on whether I'll just go ahead and allow it just because, because you've clearly had many, many days of testimony.

{¶ 29} "I'll go ahead and allow it until 10:30, and, Ms. Rutter, if you require additional time, we will make accommodation on Friday afternoon.

{¶ 30} "Ms. Rutter: Thank you, Your Honor.

{¶ 31} "Mr. Hansen: I won't be here on Friday.

{¶ 32} "The Court: Mr. Hansen, that's the only time I'm going to have available to continue this action.

{¶ 33} "Mr. Hansen: Well, I'm—I'm going to be out of town, Your Honor. I'm going to tell you right now, so—

{¶ 34} "The Court: You'll get—and this includes—I'll give you 15 minutes of direct.

{¶ 35} "Please raise your right hand. Swear and affirm the testimony you're about to give is the whole truth?

{¶ 36} "Understanding Mr. Hansen, I've heard from this witness [Huston] repeatedly."

{¶ 37} As we recently stated in *Mathewson v. Mathewson,* Greene App. No. 05–CA–035, 2007-Ohio-574, 2007 WL 431480:

■ {¶ 38} "Trial courts are given great deference in controlling their dockets, and therefore, a reviewing court uses an abuse of discretion standard when reviewing a trial court's requirements in this area. *State v. Unger* (1981), 67 Ohio St.2d 65, 67 [21 O.O.3d 41, 423 N.E.2d 1078]. 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [5 OBR 481, 450 N.E.2d 1140] (citations omitted).

{¶ 39} "Evid. R. 611(A) provides that the trial court 'shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to * * * (2) avoid needless consumption of time * * *.' Further, a trial court has the discretion to limit questioning of witnesses if the 'probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.' Evid. R. 403(B). Time limitations on evidence have been upheld where a party has not identified what additional evidence the party would have offered or how that evidence could have changed the court's judgment. *Readnower v. Readnower*, Greene App. No. 2004 CA 100, 162 Ohio App.3d 347, 2005-Ohio-3661 [833 N.E.2d 752], ¶ 11 (citation omitted)."

{¶ 40} In his brief, Huston argues that he was denied his right to trial and to fully present his case. Huston asserts that he had three additional witnesses under subpoena whom he was not able to call because of the time limitations set by the magistrate. Additionally, Huston asserts that the trial court improperly limited his own testimony on direct to only 15 minutes. Thus, Huston argues, the improper time limitations enforced by the magistrate amounted to an abuse of discretion.

{¶ 41} After a thorough review of the record, we conclude that the magistrate improperly limited the time in which Huston could present his case. Although the magistrate was already acquainted with the parties and the specific facts of the case prior to the custody hearing, the first hearing was held on February 12, 2009, for a half day. After the first hearing date, the trial was set over to May 20, 2009, at 1:30 p.m., as well as May 21, 2009, at 9:00 a.m., for the case to continue. Both hearing dates in May were continued because of scheduling conflicts. The magistrate set new hearing dates on August 18 and 26, 2009, in order to continue the hearing. On August 18, 2009, the magistrate was unavailable, and she continued the hearing date again, until August 26, 2009. At the beginning of the hearing on August 26, 2009, the magistrate limited the remainder of Huston's case-in-chief to one hour and 15 minutes, while giving Hood the remainder of the day to present her case. Huston's attorney immediately objected to the time limitations and stated that he was under the impression that he would be given a half day to complete his case. In fact, the record indicates that the remainder of the trial was to be held over to August 18 and 26, 2009. As stated, the August 18, 2009 date was cancelled and continued to August 26, 2009. On August 26, 2009, the magistrate clearly wanted to conclude the custody trial, but by limiting the remainder of Huston's case to one hour and fifteen minutes, the magistrate unfairly restricted Huston's ability to present his own testimony, as well as that of his remaining witnesses. Thus, the trial court abused its discretion when it adopted the magistrate's decision wherein the magistrate

unfairly limited the time in which Huston could present testimony and adduce evidence during the custody trial.

{¶ 42} Huston's first and second assignments of error are sustained.

III

{¶ 43} Huston's third assignment of error is as follows:

{¶ 44} "The trial court abused its discretion in quashing the subpoenas for the defendant's probation records and the records of the Montgomery County Children's Services."

{¶ 45} In his third assignment, Huston argues that the magistrate erred when it quashed his subpoenas for Hood's probation records, as well as records from Montgomery County Children Services relating to T.H. Huston's counsel requested the records during the hearing on February 12, 2009. After she received the documents, the magistrate performed an in camera review of the records prior to the hearing on August 26, 2009. Based on her review, the magistrate determined that the records contained no probative or relevant evidence and quashed the subpoenas.

{¶ 46} Regarding the subpoena for the probation records, Huston asserts that the documents were important to provide evidence of Hood's "deviant character." During the custody hearing, evidence was adduced that Hood had been charged with and convicted of two counts of felony theft of drugs. Evidence was also adduced that Hood successfully completed probation almost a year before the date of the custody hearing. Additionally, evidence was adduced that established that Hood was regularly tested for illegal drug use, and her urine screens were clean. Hood even testified herself regarding her past convictions. As is clear from the transcript of the hearing, Huston was able to adduce ample evidence of Hood's past criminal convictions. Accordingly, we see no prejudice to Huston stemming from the magistrate's decision to quash the subpoena for Hood's probation records.

{¶ 47} With respect to the subpoena for the records from Montgomery County Children Services, Huston asserts that he should have been entitled to discovery of the documents but does not provide any reason that his request should have been granted. The magistrate stated that she conducted an in camera inspection of the records and determined that they were neither discoverable nor relevant. Other than his bare assertion that the documents were somehow relevant, Huston fails to establish how he was prejudiced by the

magistrate's decision to quash the subpoena for the children services records. Thus, the trial court did not err when it adopted the magistrate's decision.

{¶ 48} Huston's third assignment of error is overruled.

## IV

{¶ 49} Huston's fourth assignment of error is as follows:

{¶ 50} "It was an abuse of discretion for the trial court to rely on the guardian ad litem's report that was never supplemented for trial."

{¶ 51} In his fourth assignment, Huston contends that the magistrate improperly relied on the GAL's report because the GAL failed to supplement her report prior to the second day of the custody hearing on August 26, 2009. The record reflects that the GAL filed an initial report on February 9, 2009, in which she recommended that T.H. be placed in the custody of Hood. While failing to cite any legal authority requiring the GAL to file a supplemental report, Huston essentially disagrees with the GAL's recommendation that custody of T.H. be awarded to Hood. Rather, Huston asserts that the evidence adduced at the hearing overwhelmingly established that he should have retained custody.

{¶ 52} R.C. 2851.281(I) outlines the duties of a GAL of a dependent child as follows:

{¶ 53} "The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings * * * and shall file any motions and other court papers that are in the best interest of the child."

{¶ 54} When questioned regarding her participation in the case, the GAL, Maureen Moloney, testified as follows at the August 26, 2009, hearing:

{¶ 55} "Ms. Rutter: And, Ms. Moloney, you've been involved in this case for quite some time, correct?

{¶ 56} "Ms. Moloney: Since about October of '08, yes.

{¶ 57} "Q: So do you know how many—well, strike that.

{¶ 58} "I know you've done at least one report on this case. Have you done other reports, written reports?

{¶ 59} "A: No, I have not.

{¶ 60} "Q: And while this case has been progressing, both before the report of February and after, have you continued to do your investigation?

{¶ 61} "A: Yes, I have.

{¶ 62} "Q: And have you continued to witness the child with both parents in their homes?

{¶ 63} "A: Yes.

{¶ 64} "Q: And do you have a recommendation for the Court as to who should be the custodian of [T.H.]?

{¶ 65} "A: Yes, I do.

{¶ 66} "Q: What is that recommendation?

{¶ 67} "A: I think it's in the best interest of [T.H.] to stay with her mother as custodian.

{¶ 68} "Q: And in fact, wasn't that your recommendation in February?

{¶ 69} "A: Yes, it was my recommendation in February.

{¶ 70} "Q: And based on your investigation from February to now [August 26, 2009], that has not changed, correct?

{¶ 71} "A: No, it hasn't."

{¶ 72} Despite that she did not file a second report to supplement her initial GAL report, Moloney testified that she continued to observe and investigate T.H.'s case between the hearing dates. Additionally, there is nothing in the record to suggest that Moloney did not adequately fulfill her duties as a GAL in the present case. As noted above, Moloney's recommendation that Hood be awarded custody of T.H. did not change at any time. Moloney testified that she believed that T.H. had a better parental bond with Hood than she did with Huston, and that it was in T.H.'s best interests to, therefore, be placed with Hood. Thus, the trial court did not abuse its discretion by relying on the GAL's report and subsequent testimony when it adopted the magistrate's decision awarding custody of T.H. to Hood.

{¶ 73} Huston's fourth assignment of error is overruled.

V

{¶ 74} Huston's fifth and final assignment of error is as follows:

{¶ 75} "The trial court committed prejudicial error as the decision is against the manifest weight of the evidence."

{¶ 76} In his final assignment, Huston argues that the trial court's judgment adopting the magistrate's decision that awarded custody of T.H. to Hood was against the manifest weight of the evidence. In light of our disposition with respect to Huston's first and second assignments of error, his fifth assignment is rendered moot.

## VI

{¶ 77} Huston's first and second assignments of error having been sustained, the judgment of the trial court is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

GRADY, P.J., and FAIN, J., concur.