[Cite as *Loewen v. Newsome*, 2012-Ohio-566.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

EDUARD LOEWEN

    Appellee

    v.

PATRICIA NEWSOME

    Appellant

C.A. No.    25559
               25579

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2008-11-3540

DECISION AND JOURNAL ENTRY

Dated: February 15, 2012

---

MOORE, Judge.

{¶1}    Appellant, Patricia Newsome ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that overruled her objections to a magistrate's decision and ordered that her minor child be placed in the custody of his father, Eduard Loewen ("Father"). This Court reverses and remands for a new hearing because Mother was denied her right to due process.

I.

{¶2}    Mother and Father are the parents of one minor child, born September 9, 2004, who lived with Mother during the first two years of his life. Although Father had lived in this area and had a relationship with Mother around the time of the child's birth, he later relocated out of state and apparently had infrequent contact with Mother and the child.

{¶3}    During 2005, Father filed a complaint to establish a parent-child relationship, but later voluntarily dismissed that case. On November 26, 2006, Father filed this action to establish

a parent-child relationship. On March 24, 2009, the trial court granted Father companionship time with the child. Nonetheless, Father and Mother had difficulty coordinating Father's visits with the child, each blaming the other for failing to follow the visitation order. The child had behavioral problems and had recently been diagnosed with attention deficit hyperactivity disorder. Mother was concerned that Father did not understand how to address the child's special needs.

{¶4} On August 11, 2009, the matter commenced for a hearing before a magistrate on the allocation of parental rights and responsibilities. Mother asked for a continuance to obtain counsel, but the magistrate denied her request. Thus, Mother appeared pro se and Father was represented by counsel. Because it was Father's motion, the magistrate allowed him to present his case first. Father's case concentrated on his allegations that Mother had continually prevented him from having a relationship with his child. A significant part of his case focused on custody and visitation disputes that Mother had several years earlier with the grandparents of one of her older children. The first day of the hearing was consumed by Father's witnesses: he called Mother to cross-examine her, and then called two character witnesses, who knew Father personally but had never seen him with his child.

{¶5} Father's cross-examination of Mother included extensive questioning about their disputes over his visitation with their child and the visitation and custody disputes that she had several years earlier with the family of her older child. After hours of cross-examination, Mother asked the magistrate whether she would be able to call her four witnesses. The magistrate responded that Father had a number of witnesses, and that Mother's witnesses would not testify until after Father's witnesses were done.

{¶6} The first day of the hearing ended at approximately 4:00, at which time the magistrate spoke to the parties about reconvening for a second day. The magistrate informed the parties that on the second day of the hearing "we will start at 9 a.m. and we will go until we are done. *** Whatever that time is. I've been known to leave this courthouse at 11:00 at night." The magistrate further cautioned the parties that they should use their time wisely; emphasizing that Father had already used a full day. She further noted her apparent agreement with Mother's complaint that Father had presented a great deal of evidence about what had happened many years in the past, which was not necessarily relevant.

{¶7} The second day of hearing began with the court's witness, a family court services evaluator, who was questioned by the court and both parties about which parent would be more likely to facilitate visitation with the child. Although the magistrate had stated on the record and through a journal entry that Father's evidence that day would be limited to two hours, the record reveals that the magistrate imposed no such limitation of the presentation of his evidence.

{¶8} Father began his evidence on the second day by calling the step-grandfather of Mother's older child, who testified at length about the custody disputes his family had several years earlier with Mother over that child. Mother repeatedly objected to the relevance of that testimony, but Father was permitted to continue the examination and Mother was later permitted to cross-examine the witness about those disputes. Mother was able to elicit on cross-examination that the step-grandfather, an attorney, had also failed to follow some of the court orders in that case.

{¶9} Father then testified on his own behalf. His direct testimony went well into the afternoon of the second day of the hearing and consumed approximately 25 percent of the hearing that day. Mother expressed her desire to cross-examine Father, but she first called two

of her witnesses out of order because they had scheduling conflicts and needed to leave soon.  At the conclusion of Mother's second witness, the magistrate asked Father's counsel whether she was done with Father's case, which she indicated she was.  At 4:12 p.m., despite indicating earlier that she would stay as long as it took to complete the parties' cases, the magistrate abruptly ended the proceedings.  The magistrate simply stated, "It's 12 minutes after 4.  As far as I'm concerned we are done."  The proceedings were concluded at that point, without any prior notice and without either party having an opportunity to admit their exhibits or proffer any additional evidence.  Mother was not permitted to cross-examine Father, testify on her own behalf, or call her remaining witness.   The magistrate later issued a decision that Father should be designated the residential parent and have custody of the child at his home in Florida and that Mother should be granted companionship time with the child once a month.

{¶10}  Mother initially filed pro se objections to the magistrate's decision, but she later obtained counsel, who was granted leave to supplement the objections after the transcript of proceedings was prepared.  Through the pro se and supplemental objections, Mother maintained that she had been denied her right to due process at the hearing because Father was permitted to fully present his case, yet she was denied a fair opportunity to do so.  The trial court overruled Mother's objections and ordered that the child be placed in the legal custody of Father.  Mother appeals and raises four assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ABUSED ITS DISCRETION BY CONDUCTING AN UNFAIR TRIAL, WHICH IS A BEDROCK RIGHT GROUNDED IN CUSTODY LAW AND IN VIOLATION OF [MOTHER'S] PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS.

{¶11} Mother argues that, by limiting her evidence to less than one-half of the second day, while Father was given the majority of the two-day hearing and had the opportunity to present his entire case, the trial court denied her fundamental right to due process. Given the particular facts before us in this case, we agree that Mother was denied her right to a fair hearing.

{¶12} The right to raise one's child is an "essential" and "basic" civil right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Furthermore, a parent's right to the custody of her child has been deemed "paramount." *In re Perales*, 52 Ohio St.2d 89, 97 (1977). Therefore, a parent's right to the custody of her child "must be afforded every procedural and substantive protection the law allows." *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991).

{¶13} In this situation, the trial court was required by R.C. 3109.04 to allocate parental rights and responsibilities according to the best interest of the child "upon hearing the testimony of either or both parents[.]" In determining the best interest of this child, the trial court was required to consider all relevant factors, including those enumerated in R.C. 3109.04(F)(1), which include the wishes of the parents; the child's interaction and interrelationship with his parents, siblings and other significant people; his adjustment to home, school, and community; the parent more likely to honor and facilitate court-approved parenting time rights; and whether either parent has established a residence out of state.

{¶14} The trial court seemed to have decided this custody dispute based primarily on one factor: which parent would be more likely to honor court-ordered parenting time, as that was almost the entire focus of Father's case. More significantly, although the relevant facts on that issue were sharply disputed by the parties, the trial court made its factual findings and credibility determinations based on the evidence presented by Father, as well as the court's own witness,

without allowing Mother an opportunity to testify or present her own evidence on the issue. Although Father was permitted to complete his entire direct examination, which consumed much of the second day of the hearing and focused on Mother impeding his right to visit his child, Mother was given no opportunity to cross-examine him.

{¶15} It is well settled that a trial court has broad discretion to control the proceedings to enable it to exercise its jurisdiction in an orderly and efficient manner. *See State ex rel. Butler v. Demis*, 66 Ohio St.2d 123, 128-129 (1981). A magistrate is likewise authorized to regulate the proceedings and to do everything necessary for the efficient performance of its responsibilities. Civ.R. 53(C)(2). Nonetheless, the proceedings must be managed in a manner that fulfills the court's duty to promote the accuracy and fairness of the hearing. Evid.R. 611 provides that the court "shall exercise *reasonable* control" over the mode and manner of interrogation of witnesses and presentation of evidence so as to avoid a needless consumption of time and/or harassment of witnesses, but also in a manner that preserves the truth-seeking function of the proceedings. (Emphasis added.) Evid.R. 611(A). Evid.R. 611(B) further provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility."

{¶16} An ability to testify on one's behalf and cross-examine the opposing party is particularly significant in custody hearings, as the dispute rarely leads to litigation unless the parents are in disagreement about what is in their child's best interest. Consequently, their testimony about the matter is typically conflicting and requires the trial court to pass on their credibility. At a minimum, the trial court must give each parent the opportunity to testify and to cross-examine the other and, if it must place time limitations on their presentation of evidence, it must do so in a manner that is fair to both parties.

**{¶17}** In *In re T.H.*, 192 Ohio App.3d 201, 2011-Ohio-248 (2d Dist.), the court reversed a custody decision because the trial court had unfairly restricted the father's ability to present his case at the hearing. Although the trial court apparently gave the mother the opportunity to present her entire case, it improperly restricted the father's case to one half-day of the hearing plus one hour and fifteen minutes of a second day, including a 15-minute limitation on his direct testimony. While the appellate court recognized that the trial court has the right to control the proceedings, it held that the trial court had abused its discretion by unfairly limiting the presentation of the father's case. *Id.* at ¶ 41.

**{¶18}** Similarly, the Fifth District Court of Appeals held that a mother had been denied her right to due process at a custody hearing that was factually analogous to the one before us. In *Cohen v. Cohen*, 5th Dist. No. 99CA52, 2001 WL 61081 (Jan. 22, 2001), the trial court had allocated three days for the hearing, yet it allowed the father to use the majority of that time presenting his case. After the father presented his entire case over two and one-half days, the trial court limited the mother's presentation of evidence to one-half of the third day. The trial court abruptly ended the proceedings before allowing the mother to testify on direct or to call the father on cross-examination. Although the court later allowed Mother one additional hour to give her direct testimony, she was not permitted to cross-examine the father.

**{¶19}** As in the case before us, the mother in *Cohen* was prevented from cross-examining the father about a similar dispute that centered on whether she had unreasonably prevented him from visiting the child. *Id.* at *2. Given that such a dispute required the trial court to determine the credibility of each parent's account of what transpired between them, it was fundamental to their due process rights that each party have the opportunity to testify on direct examination and to cross-examine each other. *See id.* The *Cohen* court further

emphasized, as we do here, that "[o]ur review of the transcript of the proceedings reveals that appellant and appellee 'were given different degrees of latitude to develop testimony as to the validity, or lack thereof, of the allegations'" against Mother. *Id.*

**{¶20}** In this case, the magistrate warned Mother that she might not be able to present her witnesses if she did not use her time more efficiently, but Mother was never told that the hearing would end shortly after 4:00 on the second day. Moreover, unlike Mother, Father was permitted to present all of his witnesses, which included character testimony from two witnesses who had never met the child or Father's current wife, nor had they ever been to Father's home in Florida. Father was also given the latitude to present lengthy testimony about Mother's custody and visitation problems several years earlier with her older child, which was of questionable relevance to the matter before the court. The presentation of Father's case, excluding any cross-examination by Mother, consumed the majority of the two-day hearing.

**{¶21}** Although the magistrate correctly noted that Mother's cross-examination of Father's witnesses was more time consuming than it could have been, Mother had the right to fully cross-examine Father's witnesses and the court's witness. This Court understands that the magistrate struggled to redirect Mother to ask the witnesses questions rather than argue with or testify for them, but the record fails to demonstrate that Mother's questioning consumed an inordinate amount of time. Given that Mother proceeded through the hearing without the assistance of counsel, her cross-examination of Father's witnesses was fairly-well focused on challenging their credibility and weight to be given their direct testimony.

**{¶22}** We must conclude that, under the factual situation presented in this case, Mother's due process rights were violated by the trial court's unfair allocation of time between the parties at the custody hearing, which deprived Mother of an opportunity to provide her own

direct testimony or to cross-examine Father. Mother's first assignment of error is sustained and the matter is reversed and remanded for a new hearing.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DECISION GRANTING [FATHER] PERMANENT LEGAL CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW, AND/OR AN[] ABUSE OF DISCRETION, AND WAS NOT IN THE MINOR CHILD[']S BEST INTERESTS[.]

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY NOT RULING ON MOTIONS BEFORE THE COURT AND/OR ABUSED ITS DISCRETION BY RULING ON THE MOTIONS WITHOUT REGARD TO TIME TO ASK FOR RECONSIDERATION OF THE MOTION, OR TO PRESENT OTHER MOTIONS FOR REVIEW WHEN THOSE MOTIONS WERE NOT ANSWERED, THUS FURTHER INTERFERING WITH [MOTHER'S] PROCEDURAL DUE PROCESS RIGHTS.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION BY MOVING FORWARD WITH THE TRIAL EVEN THOUGH [MOTHER] DID NOT HAVE COUNSEL AND [MOTHER] PRESENTED A LETTER THAT STATED THAT COUNSEL WOULD BE AVAILABLE FROM LEGAL AID, WHICH COULD HAVE HAD A SIGNIFICANT IMPACT ON THIS CASE. INSTEAD [MOTHER] HAD TO OPERATE PRO SE WHICH WAS AN ABUSE OF DISCRETION, CONSIDERING HER [PRIOR] COUNSEL WAS PERMITTED TO WITHDRAW FROM THE MATTER WITHOUT FOLLOWING THE SUMMIT COUNTY LOCAL RULES AND NO SUBSTITUTION OF COUNSEL WAS APPOINTED PRIOR TO [COUNSEL WITHDRAWING] SO CLOSE TO TRIAL. THIS CASE SHOULD HAVE BEEN CONTINUED, ESPECIALLY, WHEN THE COURT FREELY GRANTED THE RIGHT TO WITHDRAW WITHOUT SUBSTITUTE COUNSEL BEING IN PLACE, AGAINST ITS OWN[] SUMMIT COUNTY [LOCAL] RULES, LEAVING [MOTHER] WITHOUT COUNSEL, SO CLOSE TO TRIAL, EVEN THOUGH THE SUMMIT COUNTY LOCAL RULES WERE NOT FOLLOWED.

{¶23} Through her second, third, and fourth assignments of error, Mother asserts that the trial court's decision to place the minor child in Father's legal custody was against the manifest weight of the evidence; that the trial court erred by failing to first rule on her

outstanding motions; and that the trial court erred in allowing the hearing to proceed without Mother being represented by counsel. Because these assignments of error have been rendered moot by this Court's disposition of Mother's first assignment of error, we will not address them on the merits. *See* App.R. 12(A)(1)(c).

### III.

**{¶24}** Mother's first assignment of error is sustained. Her remaining assignments of error were not addressed because they are moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed and the cause remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR

APPEARANCES:

MARY JO HANSON, Attorney at Law, for Appellant.

JEFFREY SAMUELS, Attorney at Law, for Appellant.

LESLIE A. WEISS, Attorney at Law, for Appellee.