[Cite as *Loewen v. Newsome*, 2014-Ohio-5786.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| EDUARD LOEWEN | C.A. No. 26960 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICIA NEWSOME | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 2008-11-3540 |

DECISION AND JOURNAL ENTRY

Dated: December 31, 2014

MOORE, Judge.

{¶1} Defendant-Appellant, Patricia Newsome ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I.

{¶2} Mother and Plaintiff-Appellee, Eduard Loewen ("Father") are the parents of a minor child, born in September 2004. Father resided in the Akron area when he and Mother began their relationship, but he returned to Germany shortly after the birth of their son. Although Father initially filed a complaint to establish a parent-child relationship with the minor child in 2005, he voluntarily dismissed the complaint when he returned to Germany. The minor child resided with Mother and saw Father on the occasions that he came into town. Father travelled frequently and eventually settled down in Florida, where he married. Meanwhile, Mother remained in the Akron area and raised their son.

{¶3}     In November 2008, Father filed a second complaint to establish a parent-child relationship with the minor child.  A magistrate issued a temporary order allowing Father to have unsupervised companionship time with his son in Ohio every month for two days at a time, but Father's companionship time rarely occurred.  Tension between the parties impeded the process and, on multiple occasions, either Mother or Father asked the police to intervene.  Mother protested that the minor child had special needs, including attention deficit hyperactivity disorder, and that Father was not sensitive to his needs.

{¶4}     After holding a two-day custody hearing, a magistrate named Father the residential parent and legal custodian of the minor child, permitted Father to relocate the minor child to Florida, and gave Mother one weekend a month of companionship time, to be exercised in Florida.  Father then removed the minor son from Mother's home and took him to Florida.  Although Mother filed objections to the magistrate's decision, the trial court denied them.  Consistent with the magistrate's decision, the court named Father the residential parent and legal custodian of the minor child and awarded Mother companionship time.

{¶5}     Mother appealed from the trial court's judgment and argued that the court had violated her due process rights by conducting an unfair custody hearing.  *See Loewen v. Newsome*, 9th Dist. Summit Nos. 25559 & 25579, 2012-Ohio-566.  This Court agreed and determined that "Mother's due process rights were violated by the trial court's unfair allocation of time between the parties at the custody hearing, which deprived Mother of an opportunity to provide her own direct testimony or to cross-examine Father."  *Id.* at ¶ 22.  Consequently, we reversed the trial court's judgment and remanded the matter for a new custody hearing.

{¶6}     On February 21, 2012, after this Court's remand, the trial court issued an interim order regarding custody of the minor child.  At that point in time, the child had been living with

Father for over two years. The court's order provided that, pending further hearing, Father would be the residential parent and legal custodian of the child and Mother would have companionship time with the child in Florida. The court also appointed a guardian ad litem for the first time in the matter, noting that the parties would be responsible for sharing the costs of her deposit and any travel expenses she incurred in traveling to Florida to evaluate Father and the minor child. The court scheduled a new custody hearing for October 2012.

{¶7} By September 2012, the guardian ad litem still had not conducted her evaluations and indicated that she would not be available for the remainder of the month. Additionally, Mother raised concerns about her ability to afford the travel expenses if the evaluations occurred in Florida. Faced with the guardian's unavailability, the court ordered the evaluations to take place in Ohio during the October custody hearing. The court indicated that the hearing would commence in the absence of the guardian's report because both parties had lengthy witness lists. The court would then adjourn the hearing to allow the guardian to complete her report, including home studies, and resume the hearing once the report was finished so that the guardian could testify.

{¶8} Despite the court's orders, the October custody hearing was ultimately postponed because, at the end of September, Mother filed an affidavit of disqualification in the Ohio Supreme Court. Once that matter was resolved, the court held a pretrial conference to discuss the evaluations that still had not taken place. The parties agreed that the guardian would conduct a home study in Florida and would evaluate the minor child and Mother in Ohio. The court reminded the parties that they were responsible for splitting the guardian's travel expenses and ordered both parties, once they calculated the expenses, to deposit the money with Father's attorney. The court rescheduled the custody hearing for March 25, 2013.

{¶9}     In February 2013, Father asked the court to intervene because Mother had refused to deposit any money for the guardian ad litem, including the initial deposit towards her fees and any subsequent deposit for her estimated travel expenses.  Mother responded that she had paid the initial deposit, but had not made a deposit for any travel expenses because Father had not yet scheduled his home study and she had not been notified of the amount of the travel expenses.  On March 4, 2013, the court held a hearing to address the matter.  The guardian ad litem, Mother, and Father's counsel all appeared at the hearing.  The guardian indicated that both parties had paid the initial deposit for her fees, but that she had not received any deposit for travel expenses.  She further indicated that she believed she had spoken with both parties on the phone and had given them an estimate of her travel expenses.  According to the guardian, Mother expressed doubt at her ability to pay the money.  Mother, however, stated that she fully intended to pay the money, but had never been told what amount to pay.  Mother also maintained that, to the best of her knowledge, Father had not even scheduled his home study.

{¶10}  Father admitted at the hearing that he had not deposited any money with the guardian for travel expenses, but indicated that he had not done so because he was waiting for Mother's portion of the deposit.  After further discussion, the court attempted to end the hearing by informing the parties that it would see them at the end of March.  Mother, however, interjected her concern that a fair custody hearing could not be had without the input of the guardian.  In response, the court stated that Mother had been told the amount of money she needed to pay but had "refused to do so."  The court then told the parties for the first time that it would release the guardian from the case if the guardian was unable to complete her report in time for trial.  Over Mother's protestations that she had never refused to pay $600, the court ended the hearing.  Three days later, without any further discussion, the court issued an order

releasing the guardian ad litem. The court found that Mother's "failure to pay the travel expenses as ordered made it impossible for the Guardian *ad Litem* to do her job."

{¶11} On March 25, 2013, Mother and Father's counsel appeared for the custody hearing. Father's counsel indicated that Father would be arriving late due to a flight delay, but that she was prepared to go forward with other witnesses. Mother objected to going forward without Father and without a guardian ad litem. The court overruled her objection, but Mother persisted. The following exchange then took place:

> MS. NEWSOME: I do not wish to go forward with this and be present here, and I'm under the understanding that I do not have to be. [Father] is not even here. I think it should either be dismissed because he can't even show up for his own hearing.
>
> THE COURT: Ma'am, I've already said no to that. Now, you are welcome to stay, you're welcome to leave, whatever you want to do, but we are going to start this case.

After another brief exchange, Mother left the courtroom. The court then proceeded with Father's witnesses. After the hearing, the court awarded Father legal custody and determined that it would not be in the minor child's best interest to have parenting time with Mother.

{¶12} Mother now appeals from the trial court's judgment entry and raises three assignments of error for our review. For ease of analysis, we rearrange the assignments of error.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO MAINTAIN THE STATUS QUO FOLLOWING THE REVERSAL AND REMAND OF THE APPELLATE COURT.

{¶13} In her second assignment of error, Mother argues that the trial court erred when it refused to return the minor child to her after this Court's remand in *Loewen v. Newsome*, *supra*. She argues that, once this Court reversed the original award of custody to Father, custody should

have reverted to her and remained with her in the absence of a change of circumstances. We do not agree.

{¶14} The first custody hearing in this matter resulted in a judgment awarding Father legal custody of the minor child and granting Mother companionship time. As a result of that judgment, Father took the minor child to Florida. After this Court reversed that judgment on appeal, Mother filed a motion "for an Order enforcing and implementing the current parenting orders herein." Specifically, Mother asked the court to implement the temporary order the magistrate issued in March 2009, which only awarded Father two days a month of companionship time with the minor child. In response, the trial court issued an order on February 21, 2012. The court ordered that, "[p]ending further hearing, Plaintiff (Father) is the residential parent and legal custodian of the parties' minor child * * *." The court further ordered that Mother would have companionship time with the child in Florida, where the child had been residing for over two years.

{¶15} Mother argues that the court's February 21st order lacked "any basis in the law." She argues that, because she and Father never married, she was the legal custodian and residential parent of the minor child. *See* R.C. 3109.042. Absent any findings that a change of circumstances had occurred and that a change of custody was in the child's best interest, Mother argues, the trial court could not alter her status as legal custodian and residential parent.

{¶16} However, the trial court's entry of a temporary order during the pendency of the matter did not alter Mother's status as a custodial parent.[1] In challenging the court's February 21, 2012 order, Mother essentially conflates a temporary order with a permanent one. A

---

[1] Mother's reliance on R.C. 3109.04(B) and the change of circumstances requirement is also misplaced given that the entry of a temporary order was not a modification of a prior decree or judgment entry allocating parental rights and responsibilities.

temporary order entered in an allocation proceeding is not subject to the same statutory requirements as a permanent one. *See, e.g., Boling v. Valecko*, 9th Dist. Summit No. 20464, 2002 WL 185182, \*4 (Feb. 6, 2002). R.C. 3109.043 provides that

> [i]n any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, when requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court, without oral hearing and for good cause shown, may make a temporary order regarding the allocation of parental rights and responsibilities for the care of the child while the action is pending.
>
> If a parent and child relationship has not already been established pursuant to section 3111.02 of the Revised Code, the court may take into consideration when determining whether to award parenting time, visitation rights, or temporary custody to a putative father that the putative father is named on the birth record of the child, the child has the putative father's surname, or a clear pattern of a parent and child relationship between the child and the putative father exists.

R.C. 3109.043. Accordingly, a court may temporarily allocate parental rights and responsibilities, pending a final resolution in the action. *See id. See also Welty v. Casper*, 10th Dist. Franklin No. 10AP-803, 2011-Ohio-6128, ¶ 10-12. Even assuming that at the outset of the proceedings Mother was the sole custodial parent of the parties' child by virtue of R.C. 3109.042, she has not presented legal authority that the trial court lacked authority to temporarily allocate parental rights and responsibilities.

{¶17} Mother does not dispute the fact that the magistrate here issued a temporary order on March 24, 2009. Indeed, she argues that the March 24th order should have controlled once this Court reversed the prior decree on appeal. The only difference between the temporary order that the magistrate entered on March 24th and the temporary order that the court entered on February 21st was that the February 21st order named Father as the custodial parent. Mother fails to explain why the court lacked authority to issue a second temporary order. *See* App.R. 16(A)(7). After this Court's remand, Mother specifically asked the court to issue an order

addressing "[her] custody rights and the current parenting orders." In response, the court issued a temporary order naming Father the legal custodian of the minor child, who, at that point, had been living with Father for more than two years. Mother has not shown that the court erred by not reverting to the custodial arrangement that existed in 2009. Therefore, her second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE PREJUDICE OF MOTHER AS A RESULT OF ITS ORDER RELEASING THE GUARDIAN AD LITEM FROM HER APPOINTED DUTIES AND RESPONSIBILITIES AND ITS FAILURE TO APPOINT A REPLACEMENT GUARDIAN AD LITEM FOR THE CHILD.

{¶18} In her third assignment of error, Mother argues that the trial court erred when it released the guardian ad litem in this matter and refused to appoint another. For the reasons set forth below, we agree that the trial court erred when it released the guardian ad litem.

{¶19} A trial court's decision to remove a guardian ad litem is a discretionary one that is reviewed on appeal for an abuse of discretion. *See King v. King*, 9th Dist. Medina No. 12CA0060-M, 2013-Ohio-3070, ¶ 7; *Yoel v. Yoel*, 11th Dist. Lake No. 2009-L-063, 2012-Ohio-643, ¶ 23. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St .3d 217, 219 (1983).

{¶20} Mother first argues that the trial court was required to appoint a guardian ad litem for the minor child. In so arguing, she relies upon the Rules of Juvenile Procedure. *See* Juv.R. 4(B)(2) (guardian ad litem must be appointed when interests of the child and parents may conflict). Because the Juvenile Rules only "prescribe the procedure to be followed in all juvenile courts of this state," they do not apply here. Juv.R. 1(A). Father sought an allocation of the parties' parental rights and responsibilities in domestic relations court, so R.C. Chapter 3109

applied in this matter. R.C. 3109.04 only requires a court to appoint a guardian ad litem when a party has requested the appointment and the court interviews the child in chambers. R.C. 3109.04(B)(2)(a). *See also State ex rel. Papp v. James*, 69 Ohio St.3d 373, 377 (1994). Because the court here did not interview the minor child in chambers, and neither party requested that the court interview the child, it was not required to appoint a guardian ad litem. *See id. See also Feltz v. Feltz*, 3d Dist. Mercer No. 10-04-04, 2004-Ohio-4160, ¶ 5. The appointment of a guardian ad litem was a matter "purely within the discretion of the trial court." *Enz v. Lewis*, 4th Dist. Scioto No. 10CA3357, 2011-Ohio-1229, ¶ 16.

{¶21} Mother argues that the court abused its discretion when it released the guardian ad litem for the reason that she had refused to pay her half of the guardian's travel expenses. According to Mother, she demonstrated a willingness to pay the guardian's travel expenses, but was never informed of the amount of money she had to pay. Mother argues that "the transcript of the March 4, 2013 proceedings clearly indicates [she] was willing and prepared to pay such fees."

{¶22} After this Court's remand, the trial court appointed a guardian ad litem for the first time in this matter. In its April 12, 2012 journal entry, the court ordered both of the parties, within ten days of its order, to deposit $612 with the clerk of courts for the guardian's fees. The court further ordered:

> Additional guardian ad litem fees for travel expenses will be split equally by [Father] and [Mother] and must be deposited prior to the guardian ad litem traveling. Payment must be received in the form of either certified check, money order, credit card, debit card or cash.

(Emphasis omitted.) There is no dispute that both parties timely paid their initial $612 deposits for the guardian's fees.

{¶23} On September 7, 2012, the court held a hearing on a motion Mother had filed in which she asked the court to order Father to bring the minor child to Ohio so that the guardian could conduct her assessment in Ohio. Through her attorney at that time, Mother indicated at the hearing that she could not afford airfare for herself and the guardian to travel to Florida. Father's counsel responded that she had spoken with the guardian, and the guardian had agreed to either reduce her fee or "take kind of a nominal amount of money" from the parties so that she could travel to Florida. Due to a scheduling conflict with the guardian, however, the court ultimately ordered the guardian to evaluate the parties and the minor child in Ohio. Specifically, the court ordered that the evaluations would take place during the custody hearing the court had scheduled in October. In its September 12, 2012 order, the court wrote that the guardian would evaluate Mother and the minor child at the supervised visitation center at H.M. Life Opportunity Services. The court further wrote that Father would be responsible for paying the costs of the supervised visitation.

{¶24} Because the October custody hearing had to be rescheduled, the guardian's evaluations never took place. The court held another pretrial conference on November 19, 2012. The parties once again discussed the need for the guardian to travel, and Mother, through her attorney, indicated that she would prefer the guardian conduct her evaluations of Father and the minor child in Florida. The court stated:

> Then what the attorneys need to do is find out how much this is going to cost and then the child will have to be brought up here to Ohio [for the evaluation of Mother and the child] and have to find out how much that's going to cost and then the parties will have to deposit -- actually [Father's counsel] will handle the money so [Mother] would have to deposit half of what the costs are going to be with [Father's counsel] and then she will pay the costs.

The court issued an order, reiterating its instructions at the hearing. The November 21, 2012 order instructed the parties to contact the guardian ad litem and schedule her evaluations.

Specifically, the parties were ordered to schedule: (1) a trip for the guardian to travel to Florida to evaluate Father and the child, and (2) a trip for Father and the minor child to travel to Ohio so that the guardian could evaluate Mother and the minor child. The order further provided that, after they determined the costs of both trips, the parties should each deposit one-half of the travel expenses with Father's counsel. The order did not set forth any deadline by which the evaluations had to be completed. Additionally, because the court ordered the parties to determine the costs of the guardian's travel expenses, the order did not set forth any specific dollar amount that the parties had to deposit.

{¶25} Almost three months later, Father informed the court that Mother had not complied with its order to share in the guardian's travel expenses and asked the court to intervene. Father argued that the court had ordered Mother to pay $600 towards the guardian's travel expenses and Mother had not done so. Mother responded that she had spoken with the guardian ad litem several times on the phone and that the guardian had come to her home to meet with her. She further responded that the court's order never set forth a monetary amount for the travel expenses and, to the best of her knowledge, Father still had not scheduled his visit with the guardian in Florida. Mother responded that she fully intended to cooperate with the court's order to share in the travel expenses, but she did not know what amount of money she was expected to pay. The court set the matter for a hearing on March 4, 2013, three weeks before the rescheduled custody hearing.

{¶26} Mother, Father's counsel, and the guardian ad litem all appeared for the March 4th hearing. At the outset of the hearing, Father's counsel once again argued that the court had ordered Mother to pay $600 towards the guardian's travel expenses and she had failed to do so. Mother attempted to explain that she had never been told what amount of money she had to pay,

but the court and Father's counsel both interpreted her position as an argument that she was never told she had to pay any money at all for travel expenses. Consequently, they both pointed to the court's November 21st order and informed Mother that she had been ordered to pay half of the guardian's travel expenses. When Mother persisted that the court's order did not set forth any specific fee amounts and argued that she could not comply with the order if she did not know what amount of money to pay, Father's counsel stated that the guardian had told each of the parties to pay $600 towards travel expenses. Mother then directly asked the guardian ad litem whether she had ever told her that she needed to pay $600.

{¶27} The guardian ad litem stated that she discussed her estimated travel expenses with Mother's former attorney, but that she "believe[d]" she also had spoken to Mother about the expenses. She stated that she had discussed "an approximation of fees since [she] didn't have an idea of when [she] would be leaving." Mother replied that her recollection of their conversation was just that no travel arrangements had yet been made and that the two would speak again after Mother retained another attorney. Mother indicated that she had tried to call the guardian again three different times and left messages, but never received a return phone call. The guardian was not asked to respond to Mother's statement that she had not returned her messages. Instead, the court briefly moved on to another topic and then attempted to end the hearing without further discussion of the guardian's fees or evaluations. Mother, however, interjected that she was "concerned about what's going on" because Father still had not scheduled his home visit and she still had not been told what fees to pay for the guardian's travel expenses. The following exchange then took place:

> THE COURT: Ma'am, the information I have from the guardian is that she needs to go to Florida in order to do a home visit in order to complete her report; is that correct?

[THE GUARDIAN AD LITEM]: That's correct. And, Your Honor, the last time I spoke with [Mother] she said that she was in the process of releasing her attorney and that you said that you did not have the money for the --

[MOTHER]: I said at that particular day I didn't have any money and I wasn't sure where it was going to come from.

[THE GUARDIAN AD LITEM]: That's exactly what you told me.

[MOTHER]: But I said that I was looking for an attorney and that I would get back to you, but there was no price given to me. So if I had price, then I would have -- and no one has come forward to tell me what kind of fees needed to go into escrow and has a plane trip been planned, [Father's counsel], for [Father] to have a home visit?

[FATHER'S COUNSEL]: Your Honor, even since the filing of my motion I haven't heard any response or there has been no effort by Ms. Newsome to pay that fee.

[MOTHER]: I did file a response. I filed a motion to the Court, a response to your --

THE COURT: All right. Thank you. See everybody at the end of March.

[MOTHER]: Your Honor, this is an unfair thing that you're not allowing this guardian to be able to assess both of us with the child.

THE COURT: Back on the record.

[MOTHER]: How can we have a fair hearing?

THE COURT: We are back on the record. Ma'am, what did you want to say?

[MOTHER]: This is unfair that you are not allowing this guardian to assess both myself and [Father] with the child. How can there be a fair hearing?

THE COURT: Ma'am, what the guardian has said is that she needs to go to Florida in order to do a report. You've been informed of what you had to do in order to pay $600 to [Father's counsel] for your share of her transportation expenses. You have refused to do so.

[MOTHER]: I have not refused to pay $600. This is the first time I have been told that I have to pay $600, and I will be willing to pay $600. When is the child allowed to come up here so she can observe him with me?

THE COURT: I'm going to release the guardian from the case if we can't have the report done on time for the trial. This matter has been going on for several years.

[MOTHER]: Well, there needs to be a guardian on this case.

THE COURT: Then you should have paid the fees.

[MOTHER]: I was never told to pay any fees. There is no -- she has no evidence that I was told to pay any fees.

THE COURT: We are done.

[MOTHER]: You never ordered me to pay any fees.

THE COURT: We're off the record.

Three days later, the court issued a journal entry. The court found that, by not determining the amount of money she needed to pay and depositing that money with Father's counsel, Mother had failed to comply with its order. The court further found that "[Mother's] failure to pay the travel expenses as ordered made it impossible for the Guardian ad litem to do her job." (Emphasis omitted.) Consequently, the court released the guardian ad litem and ordered the custody hearing to go forward as scheduled.

{¶28} This Court recognizes that the removal of a guardian ad litem is a matter of discretion on the part of the trial court. *See King*, 2013-Ohio-3070, at ¶ 7. Under the facts and circumstances presented to us in this case, however, we cannot conclude that the trial court properly exercised its discretion when it released the guardian. The parties were never given a deadline by which the guardian ad litem had to conduct her evaluations. Indeed, before having to reschedule the first custody hearing, the court initially ordered that the guardian's evaluations would take place during the custody hearing. When that did not happen, the court ordered the parties to make their own arrangements for the evaluations. The parties were never told that, if the guardian was unable to conduct her evaluations by a certain date, the court would release her.

{¶29} Mother contacted the guardian and met with her, but the guardian never met with Father or the minor child because the parties had not deposited her travel expenses. The

guardian herself stated that she only discussed "an approximation of fees" with Mother because she "didn't have an idea of when [she] would be leaving" for Florida. The specific dollar amount of travel expenses that Mother owed was never the subject of a court order. Instead, the guardian stated that she "believe[d]" she spoke with Mother about needing $600 for her travel expenses. Nevertheless, Mother was adamant that, prior to the March 4th hearing, no one had told her that the amount she needed to deposit was $600. She was also adamant that she was willing to pay the $600.

{¶30} The record in this case is replete with evidence that Mother and Father are unable to communicate effectively. The parties, therefore, would have benefited from very specific instructions from the court. The court, however, never ordered the parties to deposit any specific sum for the guardian's travel expenses, never gave the parties a deadline by which the evaluations had to be completed, and never gave the parties notice of what, if any, consequences they might face if they failed to either pay their portions of the expenses or schedule their evaluations in a timely manner. Instead, the court essentially ordered the parties to facilitate the guardian's evaluations themselves and did not meet with them again until a few weeks before the scheduled custody hearing. The court gave no indication at the hearing that it intended to release the guardian until Mother persisted with her concerns about the necessity of a guardian. The court then stated for the first time in this matter that it was "going to release the guardian from the case if we can't have the report done on time for the trial." Three days later, without any further discussion, the court released the guardian.

{¶31} This Court is sympathetic to a trial court's duty to manage its docket in a timely manner. Under the foregoing circumstances, however, we cannot conclude that the court properly exercised its discretion in releasing the guardian. Mother paid her half of the guardian

ad litem's initial deposit, contacted the guardian, and met with her. Because the court never ordered Mother to pay a specific sum for travel expenses or placed a deadline on the parties' payment of those expenses, it cannot be said that Mother disregarded an order of the court. Moreover, there is no evidence that she "refused" to pay the guardian's travel expenses. To the contrary, Mother stated at the hearing that she had left several messages with the guardian, but never received an answer. She further stated that now that she knew the guardian required $600 from her for travel expenses, she was willing to pay that amount. In response, the court informed the parties for the first time that it would release the guardian if she could not complete her report in time for the scheduled hearing. At that point, the scheduled hearing was only three weeks away. Moreover, the court did not wait until the hearing to release the guardian. Instead, it released the guardian three days later without any further discussion. Because we must conclude that the court abused its discretion by doing so, we sustain Mother's third assignment of error.

### ASSIGNMENT OF ERROR I

> THE TRIAL COURT ERRED WHEN IT MISLED [MOTHER] AND CONDUCTED AN UNFAIR TRIAL IN A GROSS DISREGARD FOR MOTHER[']S PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHT TO A FAIR AND ACCURATE TRIAL.

{¶32} In her first assignment of error, Mother argues that the court offended her due process rights by conducting an unfair trial. Based on our resolution of Mother's third assignment of error, her first assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

{¶33} Mother's third assignment of error is sustained. Her second assignment of error is overruled, and her first assignment of error is moot. The judgment of the Summit County Court

of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LAURA M. WELLEN, Attorney at Law, for Appellant.

WILLIAM HALBERG and LESLIE A. WEISS, Attorneys at Law, for Appellee.