[Cite as *G.S. v. M.L.*, 2018-Ohio-4088.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


GEORGE S.

    Plaintiff-Appellee

-vs-

MEGAN L.

    Defendant-Appellant

JUDGES:
Hon. John W. Wise, P. J.
Hon. W. Scott Gwin, J.
Hon. Earle E. Wise, Jr., J.

Case No. 18 CA 0020

O P I N I O N


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 13 DR 00389 DF


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    October 4, 2018


APPEARANCES:

For Plaintiff-Appellee

ADAM K. VERNAU
VERNAU LAW LLC
1288 Brittany Hills Drive
Newark, Ohio 43055

For Defendant-Appellant

EUGENE B. LEWIS
ANN J. HANCOCK
TAFT, STETTINIUS & HOLLISTER
65 East State Street, Suite 1000
Columbus, Ohio 43215

*Wise, John, P. J.*

{¶1} Appellant Megan L. appeals the decision of the Licking County Court of Common Pleas, Domestic Relations Division, which re-allocated parental rights and responsibilities in favor of Appellee George S., the father of the parties' four-year-old son. The relevant facts leading to this appeal are as follows.

{¶2} Appellant (mother) and appellee (father) are the parents of B.L., born in September 2012. The parties were never married. For the first year of the child's life, appellee informally exercised limited parenting time. However, on April 3, 2013, appellee filed a complaint in the trial court for the allocation of parental rights and responsibilities.

{¶3} On June 5, 2013, the parties resolved the matter by filing an agreed shared parenting plan, which was approved by the trial court on June 10, 2013.[1] The parties operated under said plan for over three years without additional court involvement.

{¶4} However, in November 2016, four-year-old B.L. made allegations to appellant and appellant's mother that appellee and his girlfriend had touched his genital areas in an inappropriate manner. On November 26, 2016, appellant contacted law enforcement. B.L. also reported being touched to the mother of one of his child friends.

{¶5} Trudy Gabbard, an intake specialist at the Licking County Department of Job and Family Services, and Detective Mark Brown of the Licking County Sheriff's Office were assigned to investigate. According to appellant, Gabbard recommended a temporary cessation of appellee's exercise of parenting time during the investigation, which was closed on December 20, 2016 upon a finding of "unsubstantiated."

---

[1] We note the parties' shared parenting plan was not a pure 50/50 arrangement. Appellant had the majority of the parenting time under said plan.

**{¶6}** On December 14, 2016, appellee filed a motion seeking a finding of contempt against appellant, essentially alleging appellant had denied him parenting time on December 1, 5, and 6, 2016.

**{¶7}** On the next day, December 15, 2016, appellant filed a "motion for *ex parte* custody," which was granted forthwith via a magistrate's order. In late December, appellant coordinated a visit with appellee and the child's half-siblings, after which the child appeared purportedly "frightened."

**{¶8}** A hearing was conducted before a magistrate on January 10, 2017. Ms. Gabbard of LCDJFS testified that the agency found the child's allegations to be "unsubstantiated" and thus closed the case on December 20, 2016. Based upon the lack of further information, the seriousness of the allegations, and the child's aforesaid reaction at the recent visit with appellee, the magistrate modified the *ex parte* order to include a stepped-up schedule for appellee's visitation, but with all parenting time to be supervised and prohibiting overnight stays.

**{¶9}** Attorney Laurie Wells was subsequently appointed as the guardian ad litem by judgment entry filed on January 23, 2017.

**{¶10}** On March 16, 2017, appellee filed a motion for termination of the shared parenting plan and an order designating him as the residential parent, alleging change in circumstances.

**{¶11}** The GAL issued a written report on July 31, 2017. She recommended granting custody to appellee-father.

**{¶12}** The case proceeded to a two-day evidentiary hearing on August 2 and 3, 2017.

**{¶13}** On September 29, 2017, the magistrate issued a decision recommending the granting of appellee's motion for custody, designating him the sole legal custodian and residential parent of B.L.

**{¶14}** On October 12, 2017, the trial court granted appellant an extension of time to file her objections to the decision of the magistrate, pending the preparation of a transcript.

**{¶15}** On December 18, 2017, appellant filed her delayed objections to the magistrate's decision of September 29, 2017. Appellee filed a memorandum contra on December 27, 2017.

**{¶16}** On February 5, 2018, the trial court issued a fifteen-page opinion, overruling appellant's objections regarding the parental rights and contempt finding, and a judgment entry on February 6, 2018, entering its opinion. However, it found merit in appellant's objection relating to her income for child support purposes and returned that issue to the magistrate for supplemental hearing.

**{¶17}** The trial court then issued a final judgment entry, terminating the shared parenting plan and designating appellee-father the sole residential parent and legal custodian of B.L. The court further awarded appellant-mother parenting time in accordance with the court's Local Rule 19.

**{¶18}** On the date of the supplemental hearing, the parties reached an agreement regarding the outstanding child support issue. This resolved the final issue in the proceeding.

**{¶19}** Appellant filed a notice of appeal on March 7, 2018. She herein raises the following five Assignments of Error:

{¶20} "I. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN ADOPTING THE MAGISTRATE'S DECISION TERMINATING SHARED PARENTING UNDER THE PRIOR DECREE, AWARDING SOLE CUSTODY TO FATHER AND DESIGNATING HIM AS THE RESIDENTIAL PARENT, WHEN THE EVIDENCE IS INSUFFICIENT TO OVERCOME THE STATUTORY PRESUMPTION THAT THE EXISTING CUSTODY ARRANGEMENT IS IN THE CHILD'S BEST INTEREST.

{¶21} "II. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN ADOPTING THE MAGISTRATE'S DECISION TERMINATING SHARED PARENTING UNDER THE PRIOR DECREE, AWARDING SOLE CUSTODY TO FATHER AND DESIGNATING HIM RESIDENTIAL PARENT WHEN THE ONLY SUFFICIENT CHANGE IN THE PARTIES' CIRCUMSTANCES RELATES TO FATHER'S CIRCUMSTANCES.

{¶22} "III. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN ADOPTING THE MAGISTRATE'S DECISION TERMINATING SHARED PARENTING UNDER THE PRIOR DECREE, AWARDING SOLE CUSTODY TO FATHER AND DESIGNATING HIM AS THE RESIDENTAL [SIC] PARENT OF THE CHILD BECAUSE THE MODIFICATION IS NOT IN THE CHILD'S BEST INTEREST.

{¶23} "IV. THE TRIAL COURT COMMITTED A PLAIN AND REVERSIBLE ERROR BY FAILING TO CONDUCT THE THIRD STATUTORY TEST UNDER R.C. 3109.04 BALANCING THE HARMS VERSUS THE ADVANTAGES OF CHANGING THE CHILD'S ENVIRONMENT.

{¶24} "V. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN FINDING MOTHER DENIED FATHER'S PARENTING TIME AND CONSIDERING THE ALLEGED DENIAL UNDER TWO OF THE STATUTORY TESTS IN ADDITION TO THE

CONTEMPT WHEN SUCH DENIAL WAS JUSTIFIED BY THE EXTRAORDINARY CIRCUMSTANCES PRESENTED."

I., III.

**{¶25}** In her First and Third Assignments of Error, appellant-mother contends the trial court erred or abused its discretion in terminating the parties' shared parenting arrangement and finding that allocation of custody to appellee-father would be in the best interest of the child, B.L. We disagree.

**{¶26}** Our review of a trial court's decision allocating parental rights and responsibilities is under an abuse of discretion standard. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Furthermore, because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Girdlestone v. Girdlestone*, 5th Dist. Stark No. 2016 CA 00019, 2016–Ohio–8073, ¶ 12, citing *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Similarly, when making its determinations in custody or visitation cases, the trial court, as the trier of fact, must be given wide latitude to consider all issues. *Heckel v. Heckel*, 12th Dist. Butler No. CA99–12–214, 2000 WL 1279171. Ultimately, parental rights and responsibilities are to be allocated based upon the paramount consideration of the best interest of the child. *Trent v. Trent,* 12th Dist. Preble No. CA 98–09–014, 1999 WL 298073.

**{¶27}** We first turn to R.C. 3109.04(E)(1)(a), which states as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at

the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i)     The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii)     The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii)     The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶28}** In R.C. 3109.04(E)(1)(a), the General Assembly has created a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest. *Combes v. Combes*, 5th Dist. Morrow No. 14CA007, 2015-Ohio-584, ¶ 20, citing *Meyer v. Anderson*, 2nd Dist. Miami No. 96CA32, 1997 WL 189383.

**{¶29}** Furthermore, R.C. 3109.04(E)(2)(c) states, in pertinent part:

The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it

determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. ***.

{¶30} Also, because the instant case poses the question of whether shared parenting should have been maintained, we note R.C. 3109.04(F)(2) states:

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a)     The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b)     The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)     Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)     The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)     The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

**{¶31}** Finally, R.C. 3109.04(F)(1) mandates as follows:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a)     The wishes of the child's parents regarding the child's care;

(b)     If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)     The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)     The child's adjustment to the child's home, school, and community;

(e)     The mental and physical health of all persons involved in the situation;

(f)     The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)     Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)     Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)     Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)     Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶32}** There is no requirement that a trial court separately address each best interest factor enumerated in R.C. 3109.04. *See In re Henthorn,* Belmont App. No. 00–BA–37, 2001–Ohio–3459. Absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant factors listed in R.C. 3109.04(F)(1). *Id.*, citing *Evans v. Evans* (1995), 106 Ohio App.3d 673, 677, 666 N.E.2d 1176.

**{¶33}** The magistrate heard from a number of witnesses at the evidentiary hearing in this matter. Appellee presented his own testimony and that of his girlfriend, the child's paternal grandmother, and his girlfriend's former sister-in-law. He also called Ms. Gabbard of LCDJFS and Detective Brown. Appellant presented her own testimony and that of the child's maternal grandmother, as well as five of appellant's acquaintances, some of whom have children that are the child's friends.

**{¶34}** As previously indicated, the allegations of potential sexual abuse of B.L. were investigated by Detective Mark Brown of the Licking County Sheriff's Office and Trudy Gabbard of Licking County Department of Job and Family Services. The magistrate heard evidence that the two investigators had jointly determined there was no evidence to substantiate the allegations, and they had no concerns for the child's safety in the care of appellee-father. Among other things, Brown and Gabbard investigated appellant's claim that the child had told her about events in appellee's attic. They determined that this was effectively impossible based upon the description of the events, the layout of appellee's house, and the apparently unused and sealed-up access door to the attic. *See* Tr. at 13-14, 25-26.

{¶35} The magistrate also determined that appellee's girlfriend appeared to be a positive influence in the child's life, and the child was well-adjusted to both appellant and appellee's homes. The evidence indicated that both parties have a close bond with B.L., but appellee also has three teenage sons from a prior relationship that have a loving relationship with their half-brother. The magistrate further found that while appellant was in good physical health, "there are concerns as to [her] mental health." Decision at 4. She also found that appellant "has appeared throughout the proceedings to be emotionally erratic ***." *Id.*[2] Appellant's actions were found to have caused "trauma and stress to the child" and that appellant had "possibly plant[ed] suggestions of abuse in the child ***." *Id.* at 6. The magistrate also referenced appellant's incidents of interference with visitation (*see* R.C. 3109.04(F)(1)(i), *supra*).

{¶36} As indicated in our recitation of the facts and case, the GAL, Attorney Wells, recommended that shared parenting be supplanted with custody to appellee. She testified among other things that she always takes sexual abuse allegations seriously, and she refuted appellant's claims of lack of communication by producing a record of extensive emails that she had exchanged with appellant. *See* Tr. at 37-38. One of the chief bases of her recommendation was that appellee would much more likely facilitate both parents maintaining a relationship with B.L. than would appellant. Tr. at 47.

{¶37} In the trial court's consideration of whether shared parenting should be maintained, the evidence indicated that the parties were no longer able to consistently

---

[2] Appellant conceded in her testimony that she was commencing therapy to assist in her communication issues and had also been working with a pastor at her church. Tr. at 140-141. She also conceded that the parenting time exchanges have been "pretty bad." Tr. at 147.

make joint decisions regarding the child. *See* R.C. 3109.04(F)(2). In the same vein as the GAL, the magistrate expressed concerns that appellant, although a loving parent, would continue to try to distance the child from appellee, but that appellee would be more likely to assist the child in having a close relationship with both parents. Decision at 8.

**{¶38}** We emphasize that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. *See Thompson v. Thompson* (1987), 31 Ohio App.3d 254, 258, 511 N.E.2d 412, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. Under the present circumstances, upon review, we find the magistrate and judge duly considered the statutory "best interest" factors, and the court's decision in the present dispute does not constitute an abuse of discretion or compel us to attempt to substitute our judgment.

**{¶39}** Appellant's First and Third Assignments of Error are overruled.

II.

**{¶40}** In her Second Assignment of Error, appellant contends the trial court erred or abused its discretion in its reallocation of parental rights and responsibilities, alleging there was an insufficient demonstration of change in circumstances. We disagree.

**{¶41}** We again turn to R.C. 3109.04(E)(1)(a), which states in pertinent part as follows:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that *a change has occurred in the circumstances of the child, the child's residential parent, or either of the*

*parents subject to a shared parenting decree*, and that the modification is necessary to serve the best interest of the child. \*\*\*.

**{¶42}** (Emphasis added).

**{¶43}** The aforesaid "change in circumstances" requirement is intended in part to provide some stability to the custodial status of the children, even if the nonresidential parent shows that he or she can provide a better environment. *See Hobbs v. Hobbs*, 36 N.E.3d 665, 2015-Ohio-1963, ¶ 54 (4th Dist.).

**{¶44}** Although there is not unanimity among the various appellate districts in Ohio on the issue, this Court has taken the position that a trial court must consider the threshold question of "change of circumstances," as well as "best interest," in deciding a shared parenting termination issue. *See, e.g., Brocklehurst v. Duncan,* 5th Dist. Muskingum No. CT10–0026, 2010–Ohio–5978, ¶ 19; *Oliver v. Arras,* 5th Dist. Tuscarawas No. 2001 AP 11 0105, 2002–Ohio–1590.

**{¶45}** As an initial matter, we note appellant's motion of December 15, 2016 requests *inter alia* that she be named B.L's temporary legal custodian and residential parent. The judgment entry granting custody to appellee based on his motion to reallocate was issued more than a year later. While we recognize that a temporary order entered in an allocation proceeding is not subject to the same statutory requirements as a permanent one (*see Loewen v. Newsome*, 9th Dist. Summit No. 26960, 2014-Ohio-5786, ¶ 16), and although the appellant's aforesaid motion makes no assertion of change in circumstances, it appears rather inconsistent to this Court for appellant to have initiated this long round of custody litigation, and then simultaneously advance the claim that no change in circumstances existed in the first place.

**{¶46}** In any event, in its decision in response to appellant's objections to the decision of the magistrate, the trial court cogently set forth the following:

Several reasons were listed in the Magistrate's decision to satisfy the aforementioned definition of a change in circumstances. The Magistrate found that the Defendant [Appellant] is committing acts which can be characterized as parental alienation, denying the Plaintiff court ordered visitation and overall failing to work with the Plaintiff such that shared parenting was no longer 'workable.' Further, a review of the record lends support to the reasons cited by the Magistrate.

**{¶47}** Judgment Entry at 3.

**{¶48}** The court then discussed the investigation that had been conducted by the detective, the LCDJFS caseworker, and the guardian ad litem, all of whom "found insufficient evidence to show that the purported abuse had occurred." *Id.* at 3-4.

**{¶49}** The Court then added the following:

Further, there was testimony that the Defendant [Appellant] was often late dropping off the child, was less than cordial with the Plaintiff [Appellee] and may have been following him on occasions (Tr. 47-51, 92-98, 150-151). Additionally, there was testimony that the Defendant had denied the Plaintiff parenting time on several occasions (Tr. 78-82, 89-90). Further, there was testimony that the parties were unable to communicate over issues involving the child (Tr. 99-100, 113, 147 / TTr. 49, 59). Finally, the Guardian ad litem found that the Defendant gets upset with the Plaintiff and expresses those emotions in the presence of the child (TTr. 44).

It was not error to find that a substantial change of circumstances had occurred.

**{¶50}** *Id.* at 4.

**{¶51}** Upon review, we find no reversible error in the trial court's reasoning under these circumstances concerning the issue of change in circumstances under R.C. 3109.04(E)(1)(a).

**{¶52}** Appellant's Second Assignment of Error is overruled.

IV.

**{¶53}** In her Fourth Assignment of Error, appellant contends the trial court erred in regard to the "harm/advantage" weighing requirement of R.C. 3109.04(E)(1)(a)(iii) in its reallocation of parental rights and responsibilities concerning the child.

**{¶54}** The pertinent statute, R.C. 3109.04(E)(1)(a), states as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i)     The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii)     The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii)     The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶55}** Thus, "[i]n addition to the issues of 'change in circumstances' and whether a shared parenting modification is in the best interest of the child, a trial court must also consider whether the harm that will result from the change will be outweighed by the resultant benefits, pursuant to R.C. 3109.04(E)(1)(a)(iii)." *Girdlestone*, *supra*, at ¶ 40, citing *Oliver v. Arras,* 5th Dist. Tuscarawas No. 2001 AP 11 0105, 2002–Ohio–1590. However, R.C. 3109.04(E)(1)(a)(iii) does not require a trial court "to cast the whole of its reflection on the case into words." *Riegel v. Bowman*, 5th Dist. Delaware No. 17 CAF 01 0006, 2017-Ohio-7388, ¶ 33, quoting *Meyer v. Anderson*, 2nd Dist. Miami No. 96CA32, 1997 WL 189383.

**{¶56}** We note that in appellant's Civ.R. 53 objections, filed December 18, 2017, she argued that the magistrate had failed to fully articulate the changes in circumstances, that no substantial change of circumstances had occurred, that it was not in the child's best interest to terminate the shared parenting plan and designate appellee as the residential parent, and that she should not be held in contempt for interfering with appellee's parenting time. She also objected to the magistrate's computation of child

support and the allocation of the tax exemption. However, no objection was presented on the specific issue of harm/advantage weighing. We have emphasized that while there may be "room for some overlap" between the consideration of the best factors of R.C. 3109.04(F)(1) and the harm/advantage analysis of R.C. 3109.04(E)(1)(a)(iii), they are separate questions. *Riegel v. Bowman*, *supra*, at ¶ 36.

{¶57} Pursuant to Civ.R. 53, objections to a magistrate's decision must be specific. *Stephens v. Bertin*, 5th Dist. Stark No. 2006 CA 00052, 2006-Ohio-6401, ¶ 25. Furthermore, Civ.R. 53(D)(3)(b)(iv) provides that except for a claim of plain error, a party shall not assign as error on appeal the trial court's adoption of any factual finding or legal conclusion "unless the party has objected to that finding or conclusion * * *."

{¶58} In the case *sub judice*, the magistrate made the "harm/advantage" finding required by R.C. 3109.04(E)(1)(a)(iii), and her overall decision was adopted by the trial court on February 5, 2018, with the exception of the issue of certain income for child support computation purposes. Under the circumstances presented, we find the arguments set forth in the present assigned error to be waived on appeal, and we find no justification for invoking the plain error rule.

{¶59} Appellant's Fourth Assignment of Error is therefore overruled.

V.

{¶60} In her Fifth Assignment of Error, appellant contends the trial court erred or abused its discretion in finding her in contempt for interference with visitation and relying on the visitation issue in its "best interest" assessment. We disagree.

{¶61} "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v.*

*Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph two of the syllabus. Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. *Wadian v. Wadian,* 5th Dist. Stark No. 2007CA00125, 2008-Ohio-5009, 2008 WL 4394730, ¶ 12, citing *In re Mittas,* 5th Dist. Stark No. 1994 CA 00053, 1994 WL 477799. Interference with visitation is typically redressed in family courts via civil contempt. *See, e.g., Montgomery v. Montgomery,* 4th Dist. Scioto Nos. 03CA2923, 03CA2925, 2004-Ohio-6926, 2004 WL 2940915, ¶ 13, citing *Mascorro v. Mascorro,* 2nd Dist. Montgomery No. 17945, 2000 WL 731751. "As an appellate court, we must be cognizant that a domestic relations court is often tasked with providing a forum for peaceable redress of disputes in the complex realm of post-decree litigation * * *." *Murphy v. Murphy,* 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020, 2014 WL 4627809, ¶ 32. The authority and proper functioning of the court is the primary interest involved in a contempt proceeding and, as such, great reliance should be placed upon the discretion of the trial court. *Rooney v. Rooney,* 5th Dist. Stark No. 2014CA00165, 2015-Ohio-1852, 2015 WL 2255201, ¶ 15 (additional citations omitted).

**{¶62}** The magistrate found that appellant denied appellee his parenting time in violation of court orders for approximately three weeks - from approximately the fourth week of November through the second week of December 2016, and again on or about January 12, 2017. While appellant was apparently under the impression that she could, without court approval, rely on the alleged recommendation from LCDJFS to cease visitation while the investigation ensued, we nonetheless hold the trial court could have properly found, within its discretion, that appellant's actions involving appellee's parenting time during the period in question constituted a form of disrespect or obstruction toward

the court's functioning so as to warrant a contempt finding. *See Windham Bank, supra,* paragraph one of the syllabus. We therefore affirm the contempt finding and additionally find no reversible error in the magistrate's reference to this issue in determining the "best interests" issue.

**{¶63}** Appellant's Fifth Assignment of Error is overruled.

**{¶64}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is hereby affirmed.

By: Wise, John, P. J.

Gwin, J., and

Wise, Earle, J., concur.


.

JWW/d 0914